# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-0495


**PAMELA JANE WILLIAMS MISHLOVE**

**VERSUS**

**LAWRENCE ALAN MISHLOVE**


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2003-5777
HONORABLE DAVID A. BLANCHET, DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and J. David Painter, Judges.


**REVERSED AND RENDERED.**

**Chris Villemarette**
**Scott M. Hawkins**
**Marikatherine Sonnier**
**Hawkins & Villemarette, L.L.C.**
**107 Regency Square**
**Lafayette, LA 70508**
**(337) 233-8005**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Pamela Jane Williams Mishlove**

**Diane Sorola**
**402 West Convent Street**
**Lafayette, LA 70501**
**(337) 234-2355**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Lawrence Alan Mishlove**

PETERS, J.

Pamela Jane Williams Mishlove (Pamela) appeals the trial court's rejection of her request for reimbursement of funds she claims to have paid in the support of her marriage to her former husband, Dr. Lawrence Alan Mishlove (Lawrence). For the following reasons, we reverse the judgment of the trial court and render judgment in favor of Pamela Mishlove.

## DISCUSSION OF THE RECORD

Pamela and Lawrence were married on February 22, 2000, separated on October 22, 2003, and were divorced by judicial decree rendered September 16, 2004. Prior to their marriage, the couple entered into a matrimonial agreement wherein they renounced in advance the existence of the community of acquets and gains during their marriage. Instead, they agreed that all property, whether acquired before or during the marriage, would remain the separate property of the acquirer. With regard to the expenses of the marriage, the agreement provided only that "each shall contribute proportionally to the expenses of the marriage." This portion of the agreement provides the basis for this litigation.[1]

On May 12, 2004, Pamela filed a petition for declaratory judgment seeking to have the matrimonial agreement dissolved for Lawrence's breach of the agreement, and further seeking reimbursement for monies spent and debt incurred by her for expenses of the marriage.[2] The reimbursement issue, as well as a number of other issues, were heard on November 7, 2005, and after completion of the evidence, the trial court took the matter under advisement. Thereafter, on June 30, 2006, the trial

---

[1]The record reflects that numerous issues arising from the dissolution have been litigated. However, the only issue before us in this appeal relates to expenses incurred during the marriage.

[2]The trial court ruled on November 18, 2004, that the matrimonial agreement could not be dissolved based on Lawrence's breach, and this decision was not appealed.

court issued written reasons for judgment disposing of all of the issues. With regard to the reimbursement issue, the trial court stated the following:

> The remaining issue to be decided by the Court was whether MS. MISHLOVE was entitled to a money judgment from DR. MISHLOVE due to his failure to contribute proportionally to the expenses of the marriage. As the plaintiff, MS. MISHLOVE bears the burden of proof that DR. MISHLOVE failed to contribute proportionally to the expenses of the marriage.
>
> MS. MISHLOVE introduced into evidence credit card summaries with attached statements in order to prove that she has a current credit debt of $51,922.86. She testified that these credit card charges were for expenses of the marriage.
>
> On the other hand, DR. MISHLOVE testified that MS. MISHLOVE had run up credit card charges during the marriage which he paid off once she revealed the balances to him. According to his testimony, he admonished MS. MISHLOVE not to run the credit card bills up again since he would not pay them. DR. MISHLOVE insisted that he made regular contributions to the household in which MS. MISHLOVE paid certain expenses and he paid the remaining expenses of the family directly.
>
> MS. MISHLOVE testified that DR. MISHLOVE did not give her money regular [sic] every monthly [sic], but rather he would instruct her to make purchases or charge certain items on her credit cards and would later refuse to pay her. However, MS. MISHLOVE failed to introduce into evidence any of the parties' checking account records to indicate the amount of money DR. MISHLOVE provided her during the marriage or to show how the expenses of the marriage were paid. Accordingly, the Court finds that MS. MISHLOVE has failed to sustain her burden of proof that DR. MISHLOVE did not contribute proportionally to the expenses of the marriage and her request for a money judgment against DR. MISHLOVE in the amount of $51,992.86 is denied at her costs.

The trial court executed a judgment to this effect on December 21, 2006, and Pamela perfected this appeal thereafter. In her appeal, Pamela raises two assignments of error:

1. The trial court erred in denying her demand because she could not prove the amount of money given to her as a stipend.

2. The trial court erred in denying her demand for reimbursement of at least one-half of the household expenses.

**OPINION**

In its reasons for judgment, the trial court phrased the issue as "whether MS. MISHLOVE was entitled to a money judgment from DR. MISHLOVE due to his failure to contribute proportionally to the expenses of the marriage." After considering the issue in that context, the trial court then denied Pamela's claim, concluding that she had not proven that Lawrence did not contribute proportionally to the expenses of the marriage. The trial court based this conclusion on the lack of evidence of the amount contributed by Lawrence. Specifically, the trial court found that Pamela "failed to introduce into evidence any of the parties' checking account records to indicate the amount of money [Lawrence] provided her during the marriage or to show how the expenses of the marriage were paid."

While the issue was accurately phrased by the trial court, we find that the trial court erred in finding that Pamela's failure to introduce evidence of payments by her former husband to her was fatal to her claim. Under the terms of the prenuptial agreement, both Lawrence and Pamela were to "contribute proportionally to the expenses of the marriage." The evidence established that during the marriage Lawrence pursued his career as a physician and Pamela worked outside the home for a very short period early in the marriage. However, during the majority of the time the couple were married, Pamela maintained the home. Earning essentially no money during the course of the marriage, she had no funds to contribute to the expenses of the marriage; instead her contribution to the expenses of the marriage consisted of her efforts in running the household. Under those conditions, Lawrence was required to pay all of the expenses of the marriage. *See, generally, Fleishmann v. Fleishmann*, 538 So.2d 306 (La.App. 5 Cir. 1989), *writ granted in part, denied in pertinent part*,

3

567 So.2d 601 (La.1990) and *Finley v. Finley*, 305 So.2d 654 (La.App. 1 Cir. 1974). Thus, the question before the trial court was not whether Lawrence contributed proportionately to the marriage, but rather whether the credit card debt for which Pamela seeks reimbursement was created by charging items that are valid expenses of the marriage.

"Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence." *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252, p. 7 (La. 2/20/95), 650 So.2d 742, 747. Because the record is otherwise complete in this matter, we make our own independent *de novo* review of the record and determine the preponderance of the evidence.

Both parties agree that Lawrence gave Pamela approximately $3,000.00 per month to cover household expenses. There also appears to be little dispute that sometime during the marriage, after Pamela had acquired a Yukon Denali automobile, he increased the amount to $4,500.00 to pay the $1,400.00 monthly note on the automobile. Thus, the uncontradicted evidence is that Pamela had approximately $3,000.00 per month to meet the financial obligations of the home.

There is also no dispute that Pamela incurred significant credit card debt during the marriage. At trial she set the amount at $51,922.86, which included the principal debt as well as late charges and interest. She asserts in this litigation that the debt arose solely from purchases which supported the home and marriage. Pamela testified that this credit card usage and debt began early in the marriage because the funds Lawrence provided her were not sufficient to pay the monthly expenses she was

4

required to cover. Her debt continued to accumulate because she was required to supplement the monthly allowance that Lawrence gave her. According to Pamela, when the funds Lawrence supplied were not sufficient to pay the bills, or when he was late in providing the funds, she would borrow from one credit card to timely pay another. She testified that occasionally she would convince Lawrence to pay the bills and bring the credit cards up-to-date. Lawrence admitted that at least one time he paid a credit card bill of approximately $15,000.00 at Pamela's request, and that he paid balances on numerous others. He also admitted that on occasion, when Pamela exceeded the $3,000.00 per month stipend, he would provide additional funds—but only if she produced the receipts for the purchases, and only if he felt the receipts warranted reimbursement.

With regard to the marital expenses, Pamela testified that she was responsible for all of the out-of-pocket expenses, including co-payments for doctors' visits, all expenses for the children, diapers, toys, Lawrence's dry cleaning, groceries, maid service, baby sitters, plumbing charges, gasoline, and clothing for herself as well as for the children. She also asserted that she paid for most of the meals eaten away from the home. Lawrence testified that he paid for the mortgage on the home, automobile notes, utilities, pool maintenance, lawn service, gasoline expenses, telephone, and social expenses related to eating out—all in addition to the allowance he provided his wife.

Lawrence testified that when he and Pamela married he paid a $10,000.00 debt owed by her. Additionally, because he believed Pamela abused the use of the credit cards, he took the one issued in his name away from her. Pamela disputed

Lawrence's claim concerning the pre-marriage debt, and testified that the credit cards, which were in her name only, were necessary to pay for the expenses of the home.

In support of her claim, Pamela produced numerous credit card statements. A review of the charges listed on these statements establishes that most can be traced to purchases at department stores, home repair and hardware stores, paint stores, clothing stores, restaurants, airlines, gas stations, auto repair service centers, dry cleaners, toy stores, utility companies, doctors' offices, drug stores, office supply stores, insurance companies, shoe stores, and the post office. There were also numerous finance charges, late fees, and overdraft charges. These all appear to be customary and ordinary expenses of the marriage, from which Lawrence, Pamela, and their children all benefitted. In fact, when shown the credit card statements, Lawrence could not dispute any charges. Specifically, when asked whether there were any charges that were unnecessary or unrelated to the household, he stated that he could not "make attestations whether they were valid or invalid items that [Pamela was] claiming."

To determine whether the charges are expenses of the marriage, we must determine the nature of the charges as well as the ultimate use of the items purchased. *See Sequeira v. Sequeira*, 04-433, 04-463 (La.App. 5 Cir. 11/30/04), 888 So.2d 1097, *writ denied*, 05-350 (La. 4/29/05), 901 So.2d 1065. The only positive evidence in this regard was Pamela's testimony that all purchases were for the marriage. Lawrence could not dispute Pamela's testimony except to say that he did not believe that the expenditures were related to the normal expenses of maintaining the home, children, and marriage.

6

In evaluating the testimony of the two litigants, we note that at the same time the matter now before us on appeal was tried the trial court was called upon to consider a rule to reevaluate Lawrence's child support obligation. Lawrence's testimony in that regard is pertinent to the issue now before us. On the one hand, Lawrence asserts that $3,000.00 per month should have been more than enough for Pamela to pay the day-to-day expenses of the household. On the other hand, he asserted that his share of the very basic monthly expenses necessary to maintain his current lifestyle as a practicing physician in Florida required that he pay $100.00 per month for an alarm system, $1,000.00 per month for maid service, $100.00 per month for carpet cleaning, $1,000.00 per month for automobile operating expenses, $300.00 per month for television and computer cable service, $1,000.00 for disability and life insurance coverage, and approximately $500.00 per month for personal grooming needs. Thus, he claims expenditures of over $4,000.00 in basic expenses without even considering the day-to-day costs of raising a child and maintaining a home.

Our review of the record before us persuades us that Pamela met her burden of establishing by a preponderance of the evidence that the credit card debt as of the date of trial was created by charging items that are expenses of the marriage. Additionally, we reject Lawrence's argument that the prenuptial agreement requires that Pamela pay one-half of the expenses of the marriage. While it would have been very simple to make that a requirement of the agreement, the parties choose to require a proportionate contribution. In this case, Pamela's proportionate share was zero, because she had no income or assets to contribute. Accordingly, as set out in their prenuptial agreement, Lawrence was responsible for the $51,922.86 in credit card debts for which Pamela has requested reimbursement.

7

**DISPOSITION**

Following our *de novo* review of the record, we reverse the trial court's denial of the demands of Pamela Jane Williams Mishlove and render judgment in her favor and against Dr. Lawrence Alan Mishlove in the amount of $51,922.86, together with all legal interest from the date of judicial demand until paid in full. We assess all costs of these proceedings to Dr. Lawrence Alan Mishlove.

**REVERSED AND RENDERED**.