MADELEINE M. LANDRIEU, Judge.
| ¶ This appeal involves a dispute over certain reimbursement claims and the proceeds from the sale of real property. The property, which is located at 16 Shoal Creek Drive in New Orleans, Louisiana, was the marital home of Mr. Andrew de Klerk and Ms. Louise de Klerk. Mr. de Klerk appeals the trial court’s judgment (1) finding that he and Ms. de Klerk were co-owners of the property, (2) denying certain reimbursement claims made by him and (3) granting certain reimbursement claims in favor of Ms. de Klerk. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEEDINGS BELOW
Mr. and Ms. de Klerk came to New Orleans in 1979 from South Africa in order for Mr. de Klerk to attend Tulane Law School and obtain an L.L.M. in Maritime Law. They were unmarried at the time, but were married in New Orleans the following year. At that time, they entered into an “ante nuptial contract” opting out of the community property regime. After Mr. de Klerk’s graduation from Tulane, the de Klerks returned to South Africa. They moved back 12to New Orleans in 1982 and remained here throughout their marriage. Upon returning to New Orleans, the parties executed a second marriage contract, again opting out of the community property regime. During their twenty-nine year marriage, Mr. de Klerk supported the family through the practice of law and Ms. de Klerk took care of their home and had primary responsibility for the care and raising of the couple’s two children.
Mr. and Ms. de Klerk purchased the Shoal Creek Drive property on May 3, 1993, with funds from the sale of the de Klerk’s previous home and Mr. de Klerk’s earnings from his law practice. Both Mr. and Ms. de Klerk were listed as sellers on the Settlement Statement of their .previous home, and both were listed as borrowers on the Settlement Statement for their Shoal Creek home.
Ms. de Klerk filed for divorce in November of 2009, and a judgment of divorce was rendered on August 31, 2010. Ancillary to the divorce proceeding, the trial court found that the marriage contracts were valid and enforceable and, therefore, no community property existed between the parties. Ms. de Klerk filed supervisory writs to this court and the Louisiana Supreme Court; both of which were denied.[1] *208 de Klerk v. de Klerk, 11-0831 (La.App. 4 Cir. 10/27/2011) (unpub.), writ denied, 11-2617 (2/3/12), 79 So.3d 330.
Mr. de Klerk filed a “Petition for Declaratory Judgment ánd to Determine Reimbursements” in order to determine ownership of the home and/or | .^reimbursement claims. Subsequent to the filing of the petition, the property was sold. The net proceeds of the sale and a refund from the escrow mortgage account were placed in the registry of the court, pending judicial resolution of ownership.[2] Mr. and Ms. de Klerk each petitioned the court for leave to withdraw one-half of the sale proceeds. After a contradictory hearing, the trial court granted Mr. de Klerk’s motion and denied the relief as to Ms. de Klerk.
After a trial on the issue of ownership of the sale proceeds and the parties’ respective claims of reimbursement, the trial court rendered judgment finding that Mr. and Ms. de Klerk were co-owners in indivi-sión of the property and were entitled to an equal share of the proceeds of the sale. The court then considered the various reimbursements raised by the parties, granting some and denying others. This appeal follows.
ASSIGNMENTS OF ERROR
Mr. de Klerk asserts the following assignments of error:
1. The trial court erred by finding that the property was co-owned by him and Ms. de Klerk.
2. The trial court erred by denying his claims for reimbursement for the funds used for the initial purchase of the property, the costs associated with the improvements made to the property during the marriage, and certain mortgage payments made by him.
|43. The trial court erred by granting Ms. de Klerk’s claims for reimbursement relative to the balance on a home equity line of credit at the time the property was sold and payments Ms. de Klerk had made to satisfy outstanding debt on a Whitney personal credit line, and a Chase credit card.
STANDARD OF REVIEW
We review this case under the “clearly wrong” or “manifestly erroneous” standard. This court recently articulated this standard in Mazzini v. Strathman, 13-0555, pp. 4-5 (La.App. 4 Cir. 4/16/14), 140 So.3d 253, 256:
We review factual findings of the lower court under the manifest error standard of review. Applying that standard, we must first find from the record that there is a reasonable factual basis for the lower court’s findings of fact; second, the record must establish that the lower court’s findings are not manifestly erroneous or clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Factual findings should not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). As long as the trier of fact’s findings are reasonable in light of the record as a whole, we will affirm. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990).
*209 DISCUSSION
Mr. de Klerk first contends that the trial court erred in finding the Shoal Creek property to be co-owned by him and Ms. de Klerk. He argues that because they were separate in property, and his earnings alone were the source of the funds to purchase the home, the home is owned by him exclusively. He then contends that if he is not the sole owner of the home, he is entitled to certain reimbursements from Ms. de Klerk because he paid all the expenses the property and all of the expenses of the marriage. Ms. de Klerk acknowledges the ruling of the trial- court that she and her husband had a separate property agreement, but contends, ^^nonetheless, that they were co-owners of the family home. In support of her position, she relies on Louisiana Civil Code article 797, which addresses the co-ownership of immovable property, and Louisiana Civil Code article 2373, which addresses the sharing of the expenses of the marriage. Ms. de Klerk contends that these articles support the trial court’s findings that the parties co-owned the property and that the expenses of the marriage were rightfully borne by Mr. de Klerk as he was the wage-earning spouse. Thus, she argues that he is not entitled to any reimbursements from her for these expenses. We discuss both of these codal articles and the trial court’s findings more fully below.
At the trial of these proceedings, the trial court made a factual finding that during the twenty-nine years the de Klerks were married, Mr. de Klerk paid all monetary expenses of the marriage, and Ms. de Klerk’s contributions to the marriage, which consisted of managing the household and taking primary responsibility for the day-to-day raising of the children, were non-monetary. This factual finding is not manifestly erroneous. There is nothing illegal, inequitable or, for that matter, unusual about this sharing of family obligations, regardless of whether the spouses are living under a community property or separate property regime. See, for example, Mishlove v. Mishlove, 07-0495 (La.App. 3 Cir. 10/3/07), 967 So.2d 567, in which the trial court recognized the obligation of the wage-earning spouse to pay all of the expenses of the marriage when the other spouse does not work outside of the home and has no funds to contribute. | ^Louisiana law also provides that whether in community or not, married person owe each other duties of fidelity, support; and assistance. La. C.C. art. 98.
We will not disturb this factual finding as it is supported by both the record and the law. Against this backdrop, we consider whether the trial court properly determined the ownership of the Shoal Creek Property and the reimbursements due each party.
Co-ownership of the Shoal Creek Drive Property
In his first assignment of error, Mr. de Klerk contends that the trial court erred in finding that the parties were' co-owners of the property. Louisiana Civil Code article 797 provides that “[ojwnership of the same thing by two or more persons is ownership ún indivisión. In the absence of other provisions of law or juridical act, the shares of all co-owners are presumed equal.” In this case, the parties were operating under a separate property regime governed by an ante-nuptial agreements and a post-nuptial agreement. Neither agreement addresses their ownership of property.' Thus, Mr. de Klerk had the burden of rebutting the legal presumption of co-ownership. We find that the trial court did not err in finding that he failed to do so. .
The Shoal Creek Drive property was purchased in both Mr. and Ms. de Klerk’s names. Ms. de Klerk attended the closing *210 on the home and signed all documents as a co-owner. The home was bought, in part, with funds from the sale of their prior family home, and Ms. de Klerk was listed as a seller of that piece of property. Ms. de Klerk testified that she believed that she and Mr. de Klerk owned |7the home together, consistent with them respective contributions to the family: he was the sole wage earner, and she cared for the home and non-monetary family obligations. There is no evidence in the record before us to suggest anything other than that the parties mutually intended, at the time of the purchase, to be co-owners of the property.[3] The mere fact that the de Klerks had a separate property regime is not sufficient evidence to rebut the presumption of co-ownership, especially in light of the trial court’s finding that Mr. de Klerk was responsible for all of the expenses of the marriage. As Mr. de Klerk failed to rebut the presumption of co-ownership, this assignment of error is without merit.
Reimbursement Claims
 In his second assignment of error, Mr. de Klerk asserts that the trial court erred in denying his reimbursement claims for (1) the funds used for the initial purchase of the property; (2) the costs associated with the improvements made to the property during the marriage, including the costs of constructing the pool, landscaping, electrical work, porch, and driveway; and (3) the mortgage payments made prior to August 1, 2011, including those made to the construction loan, the original mortgage, and the refinanced mortgage.[4] In order to determine whether the trial court erred in denying these reimbursement claims, we must first determine if the trial court erred in finding these to be expenses of the marriage. To determine whether a particular charge is an expense of the marriage, the court must | sdetermine the nature of the charge as well as the ultimate use of the item purchased. Sequeria v. Sequeria, 04-433, 04-462, p. 4 (La.App. 5 Cir. 11/30/04), 888 So.2d 1097, 1102. Buying and maintaining a home is an expense of the marriage.
It can, of course, be argued that constructing a swimming pool and landscaping the property inures to the overall value of the property such that these expenses should be shared by co-owners in indivi-sión. It can be equally argued that in a twenty-nine year marriage, these costs were incurred for the use and enjoyment by the family. The burden of proving a reimbursement claim rests with the party making the claim. Here, Mr. de Klerk presented no evidence of expenses incurred by him for the improvement of the property and no evidence that any of the alleged improvements increased the value of the home. The only evidence Mr. de Klerk presented in support of these reimbursement claims was a document he created in which he estimated the amount he spent on improvements over the years. We cannot say that the trial court erred in denying these reimbursement claims as Mr. de Klerk presented insufficient proof to warrant reimbursement, and it was not an abuse of discretion for the trial court to have found, under the facts presented, that these were expenses of the marriage.[5]
*211 In his final assignment of error, Mr. de Klerk contends that the trial court erred in awarding Ms. de Klerk’s reimbursement claims for a Chase home equity |9line of credit, a Whitney personal credit line, and a Chase credit card, all of which had balances on them at the time of the filing of the divorce. The Chase home equity line of credit was paid from the proceeds of the sale of the Shoal Creek property. Ms. de Klerk paid the balance of the Whitney personal credit line and the Chase credit card and sought reimbursement of these expenses from Mr. de Klerk.
The Chase home equity line of credit was obtained in both parties’ names and was secured by the Shoal Creek property. Mr. de Klerk contends that because the home equity line of credit was secured by the home, it is an indebtedness on the property for which they are both responsible under the laws governing co-ownership. Ms. de Klerk testified at trial that they used the home equity line of credit in the same maimer as the credit cards were used, to pay for various household expenses and their activities of daily living. Her testimony is supported by the home equity line of credit monthly statements introduced at trial, which show charges at gas stations, grocery stores, and various retail outlets during the marriage. Moreover, the line of credit statements introduced into evidence show that Mr. de Klerk increased the indebtedness on this line of credit by $19,600 when he wrote a check for this amount and deposited it into Crescent Bank, where he maintained an individual checking account. This transfer of funds made by Mr. de Klerk from the parties’ joint line of credit to Mr. de Klerk’s individual account was made by him after the filing of the petition for divorce but before the divorce was | ingranted and the property sold. At trial, Mr. de Klerk confirmed that he had deposited these funds into his personal account.
When the Shoal Creek property was sold, this line of credit had a balance due of $40,753.88. This debt was satisfied directly out of the proceeds of the sale of the Shoal Creek property, with the net proceeds being deposited into the registry of the court. This manner of satisfying the credit line balance resulted in each party paying fifty percent of it. The evidence showed that the home equity line of credit was used to pay expenses of the marriage. In keeping with the trial court’s determination that Mr. de Klerk was responsible for one hundred percent of the expenses of the marriage, the trial court correctly granted to Ms. de Klerk a reimbursement from Mr. de Klerk of $20,376.94, representing the portion deducted from her share of the sale proceeds to pay the credit line. The trial court did not err in granting this reimbursement claim to Ms. de Klerk. Notwithstanding the fact that the home equity line of credit was secured by the property, the charges were expenses of the marriage, and not expenses on the property.
Ms. de Klerk testified that the Whitney personal credit line, with a balance of $4,038.35 at the time of the filing of the divorce, had been opened- during the building of their house and was used to purchase items to furnish and decorate the home. She testified that she had continued to use this credit line throughout the marriage for various household expenses and for things for the children. She also testified that the Chase credit card, with a balance of $2,276.12 at the time of divorce, was used in the same way. The documentary evidence in the record | nsupports her testimony, and Mr. de Klerk did not introduce any countervailing evidence. Be *212 cause Mr. de Klerk was responsible for one hundred percent of the marital expenses, the trial court did not err in granting these reimbursement claims to Ms. de Klerk. See, Mishlove, supra.
Mr. de Klerk’s assignments of error on these claims are without merit.
CONCLUSION
For the reasons stated, we affirm the judgment of the trial court.
AFFIRMED
DYSART, J., dissents in part, with reasons.

. Mr. de Klerk asserts that this court affirmed the trial court ruling that the marriage agreements were valid and enforceable. However, in denying the writ, we merely declined to exercise our supervisory jurisdiction. Diecidue v. Tittle, 12-0903 (La.App. 4 Cir. 8/14/13), *208 122 So.3d 1143. Neither party challenges the validity of the marriage contracts on appeal.

. A Home Equity Line of Credit that was secured by the property was paid in full out of the gross proceeds of die sale; and the balance, after closing expenses, was deposited into the registry of the court. Mr. de Klerk challenges the reimbursement to Ms. de Klerk of a portion of the amount used to pay the balance of this debt, as discussed below in Mr. de Klerk’s assignment of error # 3.

.Such evidence might have included, for instance, a counter letter or a declaration placed into the conveyance records that the home was being purchased with Mr. de Klerk's separate funds.

. This is the date Ms. de Klerk vacated the family home pursuant to an agreement of the parties.

. The trial court granted to Mr. de Klerk reimbursements relative to expenses he incurred on the property after his obligations of support to the marriage ended. Ms. de Klerk *211 has not appealed from this portion of the judgment.