FREDERICKA HOMBERG WICKER, Judge.
|sThe underlying case from which this appeal arises is a medical malpractice and products liability action filed by Shannon Jones and Jennifer Brunelle, individually and on behalf of their minor daughter, Haley Jones, for damages Haley sustained during heart surgery she underwent as an infant and for her parents’ individual loss of consortium and related claims. The matter was partially settled by a lump sum settlement reached with the manufacturer-defendants, Polystan A/S and Cobe Cardiovascular, Inc., but allocation of the settlement funds was not determined at the time of settlement. The trial court subsequently allocated the settlement funds between Haley’s claims and Mrs. Brunelle’s individual claims.[1] Mrs. Brunelle seeks review of the allocation judgment awarding her $65,000.00 for her loss of consortium claim and denying her individual claims for medical expenses, Lejeune damages and lost wages.
| ¿Belatedly, Mrs. Brunelle, individually and on behalf of Haley, filed a legal malpractice action against two law firms that represented plaintiffs during the settlement reached with the manufacturer-defendants in the underlying products liability case. Mrs. Brunelle asserts that the attorneys involved violated the Rules of Professional Conduct because they failed to obtain each client-plaintiffs informed consent to enter into the aggregate settlement and failed to disclose to each client-plaintiff, prior to settlement, the share or portion of the settlement funds each would receive. The law firms-defendants filed motions for summary judgment, arguing that they provided full disclosure to plaintiffs and that all plaintiffs gave informed consent to the aggregate settlement. The trial court granted the law firms-defendants’ motions for summary judgment and Mrs. Brunelle appeals. Haley, through her tutor and undertutor and with independent counsel, also appeals.[2]

Discussion

In this opinion, we address in turn the granting of summary judgments in the legal malpractice proceedings and the allocation judgment. For the reasons fully discussed herein, we reverse the trial court’s granting of summary judgments in the legal malpractice proceedings. We further find the trial court erred in limiting the evidence presented at the allocation hearing to Mrs. Brunelle’s loss of consortium claim and therefore vacate the allocation judgment and remand this matter to the trial court for further proceedings.

Legal Malpractice Proceedings

Mr. Jones and Mrs. Brunelle initially retained a Mississippi attorney who referred them to Gainsburgh, Benjamin, David, Meunier, & Warshauer, L.L.C. (the Gainsburgh firm) to represent them individually and on behalf of their minor | r,daughter, Haley.[3] Attorney Gary Roth *38 initially handled the case at the Gains-burgh firm. Plaintiffs later terminated the Gainsburgh firm but retained Mr. Roth to continue handling the litigation after he moved to another firm, Boxer & Gerson, L.L.P. Following an acrimonious divorce between Mr. Jones and Mrs. Brunelle, Mrs. Brunelle terminated Mr. Roth and re-retained the Gainsburgh firm to represent her, individually and on behalf of Haley. Mr. Roth continued to represent Mr. Jones, individually and on behalf of Haley. At the time the parties entered into the settlement at issue, on October 29, 2008, the Gainsburgh firm represented Mrs. Brunelle, individually and on behalf of Haley, and Mr. Roth with Boxer & Gerson, L.L.P. represented Mr. Jones, individually and on behalf of Haley.
Thereafter, on June 5, 2009, Mrs. Bru-nelle again discharged the Gainsburgh firm and retained new counsel. The Gainsburgh firm filed a Petition for Intervention in the 24th Judicial District Court asserting its right to unpaid legal fees and unreimbursed expenses related to plaintiffs’ representation.[4] Mrs. Brunelle, individually and on behalf of Haley, filed an answer to the petition as well as a recon-ventional demand and third-party demand against the Gainsburgh firm, Mr. Roth and Boxer & Gerson, L.L.P. (hereinafter the Roth defendants), and their insurers, alleging legal malpractice. Mrs. Brunelle, individually and on behalf of Haley, alleged that defendants violated the Rules of Professional Conduct because they failed to obtain plaintiffs’ informed consent to enter into the $8,250,000.00 aggregate settlement and that, as a result, Mrs. Brunelle and Haley |fihave suffered damages including lost interest on the settlement funds prior to the funds’ deposit into an interest-bearing account and additional legal fees incurred to litigate the subsequent allocation of the settlement funds.
Following preliminary discovery, the Gainsburgh firm and the Roth defendants each filed motions for summary judgment on the legal malpractice claims. On February 7, 2011, the trial court granted in part summary judgment in favor of the Gainsburgh firm.[5] In its judgment, the trial court found that no genuine issue of material fact exists as to plaintiffs’ informed consent to enter into the aggregate settlement and that “the fault for losing interest on the settlement funds lies with Mrs. Brunelle.” Thereafter, on March 30, 2011, the trial court granted summary judgment in favor of the Roth defendants. We address the granting of summary judgment as to each law firm-defendant separately and, for the reasons discussed below, reverse the trial court’s judgments in this regard and remand the matter to the trial court for further proceedings.

The Gainsburgh Finn

In its motion for summary judgment, the Gainsburgh firm first argued that the *39 firm advised Mrs. Brunelle to execute the settlement documents and to immediately place the settlement funds into an interest-bearing account but that she refused to do so; and second, that Mrs. Brunelle, individually and on behalf of Haley, knew that the settlement at issue would require subsequent allocation of the funds and entered into the settlement after full disclosure and with informed consent.
|7First, the Gainsburgh firm argued that Mrs. Brunelle is solely to blame for the lost interest on the settlement funds because she refused to execute the settlement documents as advised by counsel and put the settlement funds into an interest-bearing account. The record indicates that the parties entered into a consent judgment to enforce the settlement and to finally deposit the settlement funds into the registry of the court on September 29, 2009, nearly a year after the parties agreed to the settlement.[6] In support of its motion for summary judgment, the Gainsburgh firm attached Mrs. Brunelle’s deposition, pointing out that Mrs. Brunelle testified that counsel advised her to move forward with the settlement so that the settlement funds could be deposited into an interest-bearing account but that she refused to move forward with the settlement.[7] Further, the Gainsburgh firm attached the affidavit of its lead attorney handling the case, Tracey Rannals Bryan, who attested that she advised Mrs. Bru-nelle on numerous occasions to execute the settlement documents so that the funds could be placed into an interest-bearing account.
Second, regarding informed consent, the Gainsburgh firm relied on Mrs. Brunelle’s deposition, in which she testified that she was aware that the lump sum settlement did not allocate the settlement funds amongst the plaintiffs and that a subsequent allocation of the funds would be necessary. The firm also discussed the opinion of attorney Dane Ciolino, plaintiffs’ expert, and attached excerpts of. Mr. Cioli-no’s deposition. The Gainsburgh firm argues that.Mr. Ciolino’s opinion — that the attorneys involved violated the Rules of Professional Conduct — should not be considered by the court because Mr. Ciolino’s testimony merely |sasserts conclusions of law not based upon the standard practice of attorneys in this locality.
In opposition to the motion for summary judgment, Mrs. Brunelle asserts that she was unaware that’ a third-party trustee would be required to manage Haley’s portion of the settlement funds and that this additional financial burden to compensate a third-party trustee should have been disclosed by counsel prior to settlement. The record reflects that the Gainsburgh firm referred Mrs. Brunelle to another law firm to discuss the management of Haley’s funds in August of 2008 — prior to the October 29, 2008 settlement. Mrs. Brunelle argues, however, that the possibility of a third-party trustee was never discussed with any counsel until after the October 29, 2008 settlement. Mrs. Brunelle asserts she understood that she individually or together with Mr. Jones would manage Haley’s funds and that she never considered, at the time of the settlement, that a third party would need to be financially *40 compensated to manage Haley’s portion of the settlement funds. Mrs. Brunelle asserts that had counsel informed her of that significant additional financial burden to compensate a third-party trustee for the remainder of Haley’s life, she would not have agreed to settle the matter for $8,250,000.00.[8]
Mrs. Brunelle further attached excerpts of Mr. Ciolino’s deposition in opposition to the motion for summary judgment. Mr. Ciolino testified that the attorneys involved violated the Louisiana Rules of Professional Conduct because the plaintiffs, Mrs. Brunelle and Mr. Jones, individually and on behalf of Haley, did not know the share each would receive from the settlement and did not receive full disclosure as to each plaintiffs “participation” in the settlement as required under Rule 1.8(g). Mr. Ciolino further opined that the attorneys’ failure to determine the management of the settlement funds for the minor, Haley, prior to |flthe settlement also deviated below the standard required by Rule 1.8(g) in this case.
Regarding the lost interest and the Gainsburgh firm’s argument that Mrs. Brunelle is solely to blame for the delay in depositing the settlement funds into an interest-bearing account, Mrs. Brunelle argues that but for the malpractice of the attorneys in failing to determine each client’s share of the settlement and failing to consider the financial burden involved in the management of the minor child’s funds, neither the settlement nor the delay would have occurred. Mrs. Brunelle asserts that she has presented expert testimony to prove that the firm violated the Rules of Professional Conduct by failing to disclose the share or portion each client-plaintiff would receive from the settlement and by failing to determine the financial burden associated with the management of the minor’s settlement funds. Further, Mrs. Brunelle asserts that but for defendants’ substandard conduct, she and Haley would not have incurred additional legal fees to litigate the issue of the appointment of a third-party trustee or the allocation of the settlement funds.

Law and Analysis

A motion for summary judgment should be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The initial burden of proof is with the mover to show that no genuine issue of material fact exists. Metairie Carnival Club, Inc. v. Lundgren, 12-246 (La.App. 5 Cir. 10/20/12), 102 So.3d 999, 1001. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Id. The non-moving party must then produce factual support | insufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Id. Appellate courts review the granting or denial of a motion for summary judgment de novo under the same criteria governing the district court’s consideration of whether summary judgment is appropriate.
In order to establish a valid legal malpractice claim, a plaintiff must show evidence sufficient to convince a reasonable trier of fact of (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) *41 loss caused by that negligence. MB Indus., LLC v. CNA Ins. Co., 11-0303 (La.10/25/11), 74 So.3d 1173, 1184. In this case, Mrs. Brunelle, individually and on behalf of Haley, asserts that the Gains-burgh firm violated Rule 1.8(g) of the Rules of Professional Conduct relating to aggregate settlements, which provides:
(g) A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in a writing signed by the client, or a court approves a settlement in a certified class action. The lawyer’s disclosure shall include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
The Louisiana Supreme Court has stated that, “[ajggregate settlements of the claims of multiple clients are not per se impermissible, but during the negotiation of the aggregate settlement, the lawyer must confer with all of his clients and fully disclose all details of the proposed settlement, including information about each client’s claim and share of the proposed settlement.” In re Hoffman, 03-2499 (La.9/9/04), 883 So.2d 425, 432-33. The language in Rule 1.8(g) further requires informed consent and full disclosure regarding each client’s claims and “participation” in the settlement. We find that neither the Louisiana Supreme Court’s decision in Hoffman nor Rule 1.8(g) requires that each client know the exact share or amount each will receive from a proposed aggregate settlement. 11] Rather, the language in Rule 1.8(g) and the Louisiana Supreme Court’s decision in Hoffman requires an attorney to fully disclose “information” regarding each client’s share of an aggregate settlement; further, it is the attorneys’ duty to obtain informed consent from each client-plaintiff prior to entering into an aggregate settlement and to fully disclose each plaintiffs “participation” in the settlement.
In this case, we find Mrs. Brunelle put forth sufficient evidence to create a genuine issue of material fact as to whether the Gainsburgh firm obtained informed consent and provided full disclosure regarding each client’s participation in the proposed settlement. In opposition to the Gainsburgh firm’s motion for summary judgment, Mrs. Brunelle argued that the firm did not disclose certain details of the settlement. In her deposition, Mrs. Bru-nelle testified that she did not understand that a third party would be compensated to manage Haley’s Special Needs Trust and the consideration of that additional financial responsibility would have affected her decision to accept the settlement amount individually and on behalf of Haley. Further, in her affidavit attached to her opposition memorandum, Mrs. Bru-nelle attested that, since the aggregate settlement, she and Haley have incurred additional legal fees to determine the management of Haley’s portion of the settlement funds and to litigate the allocation of the funds in the trial court.
Additionally, Mrs. Brunelle, individually and on behalf of Haley, presented the deposition testimony of attorney Mr. Ciolino. Typically, a plaintiff will retain an expert witness both to establish the standard of care for prudent attorneys in the relevant locality and to show the defendant’s actions fell below the standard of care. See Sunset Ins. Co. v. Gomila, 02-633 (La.App. 5 Cir. 12/30/02), 834 So.2d 654, 657; Morgan v. Campbell, Campbell & Johnson, 561 So.2d 926, 929 (La.App. 2 Cir.1990). In his deposition, Mr. Ciolino testified to his opinion that the attorneys in *42 this case did not comply with the Rules of Professional Conduct | ^because they failed to disclose each client’s share or participation in the aggregate settlement. Further, Mr. Ciolino testified that the attorneys failed to obtain informed consent because they failed to determine the management of the child’s portion of the settlement funds prior to reaching settlement.
We find Mrs. Brunelle, individually and on behalf of Haley, presented testimony sufficient to create an issue of material fact as to whether the Gainsburgh firm obtained plaintiffs’ informed consent to the aggregate settlement at issue. We specifically do not address the merits of this matter; however, we find that a factual determination must be made as to whether defendants violated the Rules of Professional Conduct and whether any violation was the cause-in-fact of plaintiffs’ alleged damages of lost interest and/or additional legal fees incurred. Accordingly, we reverse the trial court’s February 7, 2011 summary judgment in favor of the Gains-burgh firm and remand this matter for further proceedings.

Gary Roth and Boxer & Gerson, L.L.P.

The Roth defendants, at the time of the settlement at issue, represented Mr. Jones, individually and on behalf of Haley. Mrs. Brunelle, in her capacity as tutor of the minor child, filed a third-party demand against the Roth defendants on behalf of Haley, asserting the Roth defendants violated the Rules of Professional Conduct in failing to obtain informed consent to the aggregate settlement.[9] On December 15, 2010, the Roth defendants filed a motion for summary judgment on the legal malpractice claims.
In support of their motion for summary judgment, the Roth defendants attached the affidavit of Mr. Jones. Mr. Jones attested that he executed a contract with Mr. Roth to represent him, individually and on behalf of Haley; that on | ^October 29, 2008, the parties agreed to settle the underlying matter for $8,250,000.00; that, at the time of the settlement, Mr. Roth advised him that the settlement funds had not been allocated amongst the parties and that a subsequent allocation would need to occur either by consent of the parties or through the trial court’s determination; that he freely and knowingly entered into the settlement agreement at issue; that he anticipated difficulty in reaching an agreement with Mrs. Brunelle as to the allocation of the settlement funds; that, at the time of the settlement, he knew Mrs. Bru-nelle desired to be named the sole trustee for the trust to be established to manage Haley’s portion of the settlement funds and that he objected to Mrs. Brunelle being named sole trustee; that the delays in completing the settlement were caused solely by Mrs. Brunelle; that Mr. Roth acted in a professional and competent manner throughout his representation; and that he denies all allegations made against Mr. Roth in the legal malpractice proceedings.
The Roth defendants argue that this affidavit of them client, Mr. Jones, requires that the action against them be dismissed because their client has attested that Mr. Roth did not commit malpractice. However, we find that, while this affidavit would serve as evidence against any malpractice claim Mr. Jones could individually assert, it does not justify a dismissal of the *43 minor child, Haley’s, legal malpractice claims against the Roth defendants.[10]
At the hearing on the Roth defendants’ motion for summary judgment, counsel adopted the Gainsburgh firm’s arguments in favor of summary judgment and further argued that the prior granting of summary judgment in favor of the Gainsburgh firm was the law of the case and, thus, mandated the granting of summary judgment in favor of the Roth defendants.
114The substandard conduct alleged against the Roth defendants is essentially the same as that alleged against the Gains-burgh firm: that the attorneys did not give full disclosure nor obtain plaintiffs’ informed consent to enter into the aggregate settlement. With the exception of the Roth defendants’ argument concerning Mr. Jones’ affidavit, the arguments advanced by all defendants in the malpractice proceedings are the same. Likewise, Mrs. Brunelle’s arguments regarding her knowledge, individually and on behalf of Haley, prior to the settlement and Mr. Ciolino’s opinions offered as to both firms’ conduct is the same. As such, for the same reasons discussed above in connection with the Gainsburgh firm’s motion for summary judgment, we find the trial court erred in granting the Roth defendants’ motion for summary judgment. We therefore reverse the March 30, 2011 judgment in favor of the Roth defendants and remand this matter for further proceedings.

Allocation Proceedings

On August 23, 2010, the trial court conducted a hearing to allocate the $8,250,000.00 settlement. After taking the matter under advisement, the trial court issued a judgment awarding Mrs. Brunelle $65,000.00 for her individual loss of consortium claim and $4,910,056.57 to Haley for her damages.[11]
In her memorandum in support of her motion to allocate the settlement funds, Mrs. Brunelle made claims against the settlement proceeds for lost wages, past and future medical expenses, and general damages. In her reply [ ^memorandum, Mrs. Brunelle clarified that her general damages included a loss of consortium claim as well as a claim for Lejeune damages.[12]
*44 At the allocation hearing, the trial judge instructed the parties that the hearing, as to Mrs. Brunelle’s individual claims, would be limited to consideration only of her loss of consortium claim. The trial court refused to allow Mrs. Brunelle to introduce any evidence to support her claim for past or future medical expenses incurred for Haley’s medical treatment. The trial judge further ordered that Mrs. Brunelle’s reply memorandum, asserting her Lejeune damage claim, be stricken from the record as untimely and refused to allow her to introduce any evidence to support her Le-jeune claim.[13] The trial judge also denied Mrs. Brunelle’s claim for lost wages, finding that she did not specifically plead lost wages in the petition for damages and further that she is not entitled to a lost wage claim under Louisiana law. The trial court did not permit Mrs. Brunelle to introduce any evidence concerning her other claims but rather limited the hearing only to Mrs. Brunelle’s loss of consortium claim.
We find that Louisiana law has recognized a parent’s claim to recover lost wages arising out of a parent’s obligation to care for a child immediately following an injury. Fergins v. Caddo Parish School Board, 31,729 (La.App. 2 Cir. 3/31/99), 736 So.2d 943, 946; see also Smith v. Trahan, 398 So.2d 572, 574 (La.App. 1 Cir. 6/9/80); Richard v. Walgreen’s Louisiana Co., 476 So.2d 1150, 1153 (La.App. 3 Cir.1985). We further find that Mrs. Brunelle sufficiently pled lost |! 6wages in the original petition filed in this ease.[14] Therefore, we find that the trial court erred as a matter of law in refusing to consider Mrs. Brunelle’s lost wage claim.
Ordinarily, we would address the merits of the allocation judgment on appeal and remand for a separate trial on Mrs. Brunelle’s lost wage claim. However, we find that, under the facts of this case where there is a defined source of settlement funds to compensate multiple plaintiffs for multiple claims, the claims cannot be tried separately. Rather, the trial judge must consider Mrs. Brunelle’s claims in relation to the defined source of funds available to be allocated amongst the plaintiffs. Therefore, in the interest of justice, we vacate the February 7, 2011 allocation judgment and remand this matter to the trial court for an allocation hearing to determine the merit and quantum of each plaintiffs claims in relation to the settlement funds available for allocation.

Conclusion

For the reasons provided herein, the summary judgments appealed in favor of the Gainsburgh firm and the Roth defendants are hereby reversed. Further, the February 7, 2011 allocation judgment appealed is hereby vacated and the matter remanded for further proceedings consistent with this opinion.

*45
SUMMARY JUDGMENTS REVERSED; ALLOCATION JUDGMENT VACATED; MATTER REMANDED.

. All parties assert that Mr. Jones, Haley’s father, dismissed his individual claims.

. The court-appointed undertutor, John Greene, has retained counsel, Prescott Bar-field, to represent Haley in this appeal.

. On February 22, 1999, the Gainsburgh firm filed the Petition for Damages in this matter on behalf of all plaintiffs against COBE Cardiovascular, Inc., COBE’s insurer, and Ochs-ner Clinic Foundation Hospital. An amended petition was filed on March 17, 1999, to add Polystan A/S, the manufacturer and/or distri-buter of the COBE micro oxygenator.

. The initial Petition for Intervention was filed on January 14, 2005, after Mr. Jones and Mrs. Brunelle, individually and on behalf of Haley, terminated the firm to continue to be represented by Mr. Roth. However, after Mrs. Brunelle re-retained the Gainsburgh firm in 2007 and again discharged the firm in 2009, the Gainsburgh firm amended its Petition for Intervention, asserting a right to additional compensation for additional work performed.

. As to the Gainsburgh firm, Mrs. Brunelle also asserted that the firm committed legal malpractice in continuously advising Mrs. Brunelle that she is entitled to a lost wage claim. The trial judge, as discussed in the allocation judgment portion of this opinion below, found that Mrs. Brunelle is not entitled to a lost wage claim and, thus, the trial court denied the Gainsburgh firm’s motion for summary judgment on this issue only. The Gains-burgh firm has not appealed that judgment and that portion of the judgment is not before this Court. On February 23, 2011, the trial court certified its February 7, 2011 judgment as final.

. Pursuant to a September 29, 2009 Consent Judgment between the parties, a portion of the settlement funds was placed into the registry of the court to earn interest pending allocation. The remaining portion, designated for attorney’s fees, was also placed into the registry of the court.

. The Gainsburgh firm points out that the settlement reached in October of 2008 was not executed until after September of 2009, months after Mrs. Brunelle again terminated the firm.

. Following the settlement reached, the parties entered into contentious litigation concerning the management of Haley's trust.

. Because Mrs. Brunelle and Haley are in conflict as to the allocation issue, Haley’s interest in the legal malpractice action and the allocation matter has been represented by the undertutor, John Greene, who has retained independent counsel.

. The record reflects that, at the time Mr. Jones executed his affidavit, he was co-tutor of the minor child, Haley. However, the record reflects that Mr. Jones has since been removed as co-tutor.

. In its judgment, the trial court found $100,000.00 to be a reasonable award to compensate Mrs. Brunelle for her loss of consortium claim. However, the trial judge apportioned fault, for purposes of the allocation hearing only, between the settling manufacturer defendants and the remaining medical malpractice defendants, and reduced Mrs. Brunelle's award accordingly. In this appeal, the appellants assert that the trial court erred in apportioning fault amongst the defendants based on the limited evidence and testimony presented at the allocation hearing. First, the record reflects that no allocation of fault was determined at the time of the settlement at issue. Second, the evidence presented at the allocation hearing was inadequate to properly adjudicate that issue. The trial judge erred, based upon the evidence presented, to apportion fault amongst the parties in this case. We find that, in the context of this case at this juncture, the proper avenue within which to address the question of the relative liability of the various defendants — if it becomes necessary — -is within the context of Haley’s claim against the PCF.

.The principles stated in Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), were codified in La. C.C. art. 2315.6, which provides that "... persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury[.]" La. C.C. art. 2315.6 further provides that "[t]o recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reason *44 ably expect a person in the claimant’s position to suffer serious mental anguish or emotional distress from the experience, and the claimant’s mental anguish or emotional distress must be severe, debilitating, and foreseeable.”

. Because we vacate the allocation judgment and remand to the trial court for a new allocation hearing, we do not address the trial judge’s decision to strike Mrs. Brunelle's claim for Lejeune damages due to an allegedly untimely filed memorandum or the trial judge's refusal to allow Mrs. Brunelle to present evidence to support her claim for past and future medical expenses.

. The original petition pleads that "petitioners are entitled to receive all damages as are reasonable in the premises, including sums for past, present, and future lost earnings .... ”