CHAISSON, J.
This appeal concerns a third-party legal malpractice claim filed by Jennifer Brunelle, in her capacity as court-appointed tutrix of her child, Haley Jones, against third-party defendants, Gary Roth and his law firm, Boxer & Gerson, LLP ("the Roth defendants"). Ms. Brunelle appeals an August 19, 2016 judgment granting a motion for summary judgment filed by the Roth defendants and dismissing with prejudice the legal malpractice claims against them. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
The issue currently before this Court arises from litigation that has a long and complicated procedural history, which we briefly review for the sake of clarity.
The underlying suit in this case is a medical malpractice action brought in 1999 by Shannon Jones and Jennifer Brunelle, individually and on behalf of their daughter, Haley, for severe injuries Haley sustained as an infant during a February 20, 1998 heart surgery. The petition for damages included a medical malpractice claim against the healthcare providers involved, a products liability claim against the manufacturers of the medical device used during the surgery, and loss of consortium claims for Haley's parents. At the time the petition was filed, Mr. Jones and Ms. Brunelle, then married, retained Gary Roth, an attorney then with the law firm of Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC to represent them and their daughter for all claims arising out of the incident. Mr. Roth left the Gainsburgh firm in 2005 but continued his representation of Mr. Jones, Ms. Brunelle, and Haley.
In 2006, while still being represented by Mr. Roth, plaintiffs settled their medical malpractice claims against one of the defendants, Ochsner Clinic Foundation. In order to effect the compromise agreement, Mr. Jones and Ms. Brunelle filed (in a separate proceeding in the 24th Judicial District Court) a petition to have Ms. Brunelle confirmed as natural tutrix and Mr. Jones confirmed as natural undertutor for *313 the minor child. Upon receiving letters of tutorship, Ms. Brunelle, in her capacity as tutrix, filed a motion for authority to compromise Haley's medical malpractice claim, and Mr. Jones, in his capacity as undertutor, filed a concurrence. This motion was granted by the trial court in a judgment on March 27, 2006. Subsequently, plaintiffs filed a petition in the underlying medical malpractice proceeding for court approval of the settlement of a medical claim, which was granted in April 2006.
Shortly thereafter, on June 26, 2006, Ms. Brunelle (who at that time was divorced from Mr. Jones) sent a letter to Mr. Roth in which she discharged him as attorney for herself and Haley. Then, in April 2007, Ms. Brunelle entered into a written contingency fee contract with attorneys from the Gainsburgh firm, Tracy Rannals Bryan and Robert J. David, to represent her individually and on behalf of Haley. Mr. Roth, now with the firm Boxer & Gerson, LLP, continued to represent Mr. Jones and Haley.
On October 29, 2008, plaintiffs reached an aggregate settlement with the medical device manufacturers in which plaintiffs agreed to release their products liability claim against those defendants for a lump sum of $8.25 million. At the time of this settlement, which was signed by both Mr. Jones and Ms. Brunelle in their individual capacities and on behalf of their minor child, no determination had been made as to how the lump sum would be allocated among plaintiffs for the satisfaction of their individual claims.
Disputes arose between Mr. Jones and Ms. Brunelle over the establishment of a supplemental care trust for Haley and the proper allocation of settlement funds for the satisfaction of Ms. Brunelle's and Haley's claims.[1] Thereafter, in June 2009, Ms. Brunelle discharged the Gainsburgh firm. Litigation was also commenced in the 22nd Judicial District Court in St. Tammany Parish to determine the proper tutor for Haley.[2] The 2008 settlement agreement was not perfected until November 2009, at which point the $8.25 million in settlement funds were finally deposited into court registries and began earning interest.[3]
In October 2009, in response to a petition of intervention filed by the Gainsburgh firm to protect its interest in the attorneys' fees due from the settlement, Ms. Brunelle, individually and on behalf of Haley, filed a reconventional demand against her former attorneys, Tracy Rannals Bryan and Robert J. David, the Gainsburgh firm, and their professional liability *314 insurer ("the Gainsburgh defendants"), as well as a third-party demand against the Roth defendants, alleging that these attorneys committed malpractice during the course of negotiating the 2008 settlement with the device manufacturers.
In January 2010, in response to this third-party demand, the Roth defendants filed a peremptory exception of no right of action. Following a hearing on the matter, the trial court issued a judgment granting the exception of no right of action with respect to Ms. Brunelle's individual claims for legal malpractice after finding that no attorney-client relationship existed between Mr. Roth and Ms. Brunelle at the time of the alleged malpractice. With respect to the malpractice claims filed on behalf of Haley, the trial court denied the exception of no right of action.
Subsequently, both the Gainsburgh defendants and the Roth defendants filed motions for summary judgment seeking to have the legal malpractice claims against them dismissed. As to the motion for summary judgment filed by the Gainsburgh defendants, the trial court partially granted and partially denied the motion, finding that there were genuine issues of material fact as to the representations made by the Gainsburgh attorneys to Ms. Brunelle during the settlement negotiations which precluded granting the motion for summary judgment in its entirety. As to the motion for summary judgment filed by the Roth defendants, the trial court granted the motion and dismissed the legal malpractice claim filed against them by Ms. Brunelle on Haley's behalf. Ms. Brunelle, both individually and on Haley's behalf, appealed these judgments as well as a judgment on the allocation of the settlement funds.[4]
Upon review of those judgments, this Court found genuine issues of material fact existed which precluded granting summary judgment in favor of either the Gainsburgh defendants or the Roth defendants, and we reversed the trial court and remanded the matter. Jones v. ABC Ins. Co. , 11-632 (La. App. 5 Cir. 12/12/13), 130 So.3d 35. Following the remand, the parties litigated the legal malpractice claims in the trial court for another two and one-half years.[5] ,[6]
*315 On May 2, 2016, the Roth defendants filed a second motion for summary judgment. On August 19, 2016, the trial court issued a judgment in favor of the Roth defendants and dismissed the legal malpractice claim against them. Ms. Brunelle took a devolutive appeal of this judgment and filed a motion to designate the record on appeal. The motion to designate was denied for failure to specify which records were to be designated. The trial court subsequently granted an amended order allowing for the designation of the record on appeal in which Ms. Brunelle specified those documents to be included in the record.
On appeal, Ms. Brunelle, appearing pro se and in her capacity as Haley's tutrix, raises multiple assignments of error, alleging that the trial court failed to apply the law of the case doctrine, denied Haley due process and equal protection under the law, and committed various additional factual and legal errors that warrant a reversal of the trial court's judgment.
ASSIGNMENTS OF ERROR
Ms. Brunelle specifically raises the following six assignments of error in this appeal:
1. In granting summary judgment in favor of the Roth Defendants the Trial Court deprived Haley Gabrielle Jones of her fundamental rights to due process and equal protection under the law by failing to acknowledge that her individual right to pursue legal malpractice claims against Gary Roth and Boxer & Gerson, LLP belong to her and her alone;
2. The Trial Court was clearly wrong for failing to recognize that Haley Jones and the fictitious entities "Jennifer Brunelle on behalf of Haley Jones ," "Jennifer Jones on behalf of Haley Jones " and "Shannon Jones on behalf of Haley Jones " are not one in the same and that the claims from which the Roth Defendants were seeking relief did not exist as a matter of law;
3. The Trial Court was clearly wrong for dismissing the legal malpractice claims of Haley Gabrielle Jones based on the lack of attorney-client relationship between Gary Roth and Jennifer Brunelle;
4. The Trial Court's holding that the fictitious entity "Shannon Jones on behalf of Haley Jones " was the only person who could bring a legal malpractice action against Gary Roth on behalf of Haley Gabrielle Jones is contradictory to the law;
5. The Trial Court erred in failing to determine whether or not an attorney client relationship existed between Gary Roth and Haley Gabrielle Jones at the time of the $8.25 million aggregate settlement; and
6. The Trial Court was clearly wrong for failing to apply the law of the case doctrine.
DISCUSSION
Appellate courts review summary judgments de novo using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. O'Krepki v. O'Krepki , 16-50 (La. App. 5 Cir. 5/26/16), 193 So.3d 574, 577. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents *316 show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).
The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. Id.
The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. Ricalde v. Evonik Stockhausen, LLC , 16-178 (La. App. 5 Cir. 9/22/16), 202 So.3d 548, 551-52, writ denied , 16-1923 (La. 12/16/16), 212 So.3d 1170. For a valid legal malpractice claim, a plaintiff must prove: "...1) the existence of an attorney-client relationship; 2) negligent representation by the attorney; and 3) loss caused by that negligence." Saussy v. Bonin , 12-1755 (La. App. 4 Cir. 9/4/13), 125 So.3d 1, 5.
Attorney-Client Relationship
We address Ms. Brunelle's assignments of error numbers one, two, four, and five together because they all relate to the issue of an attorney-client relationship between the Roth defendants and Haley, and the implications of the existence thereof, or the lack thereof, to this litigation. This issue has been the source of much disagreement between the parties since the inception of this litigation.
In summary, Ms. Brunelle contends that Haley's lack of capacity to contract on her own behalf is irrelevant to the issue of whether an attorney-client relationship existed between Haley and the Roth defendants. She maintains that because Mr. Jones entered into the contractual relationship, not only for himself, but also on behalf of Haley, that Haley, as an individual, had rights under that contract separate and distinct from Mr. Jones. She argues, consequently, that the Roth defendants owed a duty to Haley, independent of the duty they owed to Mr. Jones.
Although the Roth defendants acknowledge that they owed a duty to Haley, they argue that, because it was Mr. Jones who they actually contracted with, any rights that Haley may have for a breach of the duty owed to her is dependent upon their attorney-client relationship with Mr. Jones. Consequently, they maintain that Mr. Jones is the only person who may sue them for an alleged breach of their duty to Haley.
It appears that the Roth defendants conflate the issue of whether Haley, as an individual, has a potentially viable legal malpractice claim against them independent of Mr. Jones, with the issue of who has the right, in light of Haley's lack of capacity, to assert that claim on Haley's behalf. In our view, these are two separate and distinct issues.
"One of the basic tenets of establishing a claim of malpractice is proving that an attorney-client relationship existed at the time of the alleged malpractice." Saussy , 125 So.3d at 5. It is the existence of the attorney-client relationship that establishes the duty owed by the attorney to his client. See generally, Vagelos v. Abramson , 12-1235 (La. App. 4 Cir. 10/2/13), 126 So.3d 639, 650 (where there *317 was no duty arising from an attorney-client relationship, no cause of action lies for legal malpractice). The relationship between an attorney and his client is purely contractual in nature and results only from a clear and express agreement between the parties. Weinstein v. Weinstein , 10-1083 c/w 10-1084 (La. App. 3 Cir. 4/13/11), 62 So.3d 878, 882.
Because of Haley's minority at the time Mr. Jones entered into the legal representation contract with the Roth defendants, she did not have the legal capacity to enter into a contractual relationship with them on her own behalf. See La. C.C. art. 1918. There is no dispute, however, that her father, Shannon Jones, entered into an attorney-client relationship with the Roth defendants, both individually and on behalf of his minor daughter, Haley. Additionally, Ms. Brunelle acknowledges that she discharged the Roth defendants on June 26, 2006, two years prior to the alleged legal malpractice by the Roth defendants, and hired separate legal counsel to represent herself and Haley. Although it was Mr. Jones who negotiated and consented to the contractual attorney-client relationship with the Roth defendants, it is clear from the terms of the contract that the representation was for the benefit of both Mr. Jones and Haley.
Our law recognizes that a contracting party may stipulate a benefit for a third person called a third-party beneficiary. La. C.C. art. 1978. When a tutor (or undertutor) of an unemancipated minor enters into a contract on behalf of the minor for legal representation, with the expressed objective of the contract being representation of the minor's interests, such arrangement imposes a duty from the attorney to the minor.[7]
This was exactly the arrangement that resulted when Mr. Jones retained the Roth defendants to represent Haley's interests in the underlying litigation. The Roth defendants therefore had a duty, not only to Mr. Jones, but also to Haley, individually, to handle the litigation on her behalf in a competent manner. Any potential negligence by the Roth defendants in fulfilling their duties to Haley would consequently result in a viable legal malpractice claim in favor of Haley. However, because of Haley's continuing minority at the time that her individual cause of action arose, the issue also arises as to the proper party to bring the action for legal malpractice on her behalf.
The Roth defendants maintain that because Mr. Jones was the only person with whom they contracted, he is the only person that can bring such an action on Haley's behalf. We respectfully disagree, and note that application of such a rule could potentially lead to absurd results, such as prohibiting a competent adult from filing a suit for malpractice on her own behalf against an attorney who was retained by her parent to represent her interests during her minority. Or a minor who would be deprived of an otherwise viable claim for legal malpractice where the parent who retained the attorney simply refuses, for whatever reason, to bring the claim for legal malpractice on the child's behalf, even where the other parent wishes to do so to protect the child's interest.
Our law provides that during tutorship, the tutor is the proper plaintiff to sue to enforce a right of the unemancipated minor. La. C.C.P. art. 683(C). Ms. Brunelle, as the co-tutrix of Haley, is a proper party to bring the legal malpractice claim *318 on her behalf, regardless of the fact that Ms. Brunelle did not have an attorney-client relationship with the Roth defendants.[8] Solely as it relates to the procedural capacity question , we find the lack of an attorney-client relationship between the Roth defendants and Ms. Brunelle completely irrelevant.
Although we agree with Ms. Brunelle that the Roth defendants owed a duty to Haley, that any breach of that duty results in a viable legal malpractice claim in favor of Haley, individually and independent of Mr. Jones, and that Ms. Brunelle, as Haley's co-tutrix, is authorized to bring that claim on Haley's behalf, we do not agree with Ms. Brunelle's contention that the trial court reached contrary conclusions on these issues, or that those conclusions were the basis of its ruling. Regardless, whether the trial court reached contrary conclusions or not on these issues, as we have stated, our standard of appellate review of a summary judgment is de novo . Furthermore, resolution of these issues alone does not end our analysis.
Merits of Haley's legal malpractice claim
We now address Ms. Brunelle's third assignment of error, which focuses on the implications of the lack of an attorney-client relationship between herself and the Roth defendants. We have already discussed the irrelevance of the lack of an attorney-client relationship between the Roth defendants and Ms. Brunelle as it relates to the viability of Haley's individual claim for legal malpractice and the procedural question of whether Ms. Brunelle has the right to bring that claim.
However, the Roth defendants also argue that because of the lack of an attorney-client relationship between them and Ms. Brunelle, it will be impossible for her to prevail on the merits of Haley's claim for legal malpractice. We therefore now analyze the implications that the lack of an attorney-client relationship between the Roth defendants and Ms. Brunelle has on the merits of Haley's legal malpractice claim.
As previously stated, the Roth defendants owed a duty to Haley, individually and independent of Mr. Jones; however, simply determining that some abstract duty is owed provides an incomplete and insufficient analysis. In order for us to determine whether there are any genuine issues of material fact regarding the Roth defendants' duty to Haley and any potential breach of that duty, we must examine the specific acts of negligence that Ms. Brunelle alleges against the Roth defendants.[9]
*319 On the record before us, we appreciate the specific acts of negligence that Ms. Brunelle alleges against the Roth defendants to be as follows:
1. Mr. Roth failed to obtain Haley's informed consent to enter into the aggregate $8.25 million dollar settlement;
2. Mr. Roth failed to disclose to Haley, prior to settlement, the share or portion of the settlement funds each plaintiff would receive, as required under Rule 1.8(g) of the Rules of Professional Conduct, which in turn resulted in a dispute between Ms. Brunelle and Mr. Jones over allocation and management of the fund, causing additional attorneys' fees and costs;[10] and
3. Mr. Roth failed to take action to enforce the settlement and payment of settlement funds, resulting in lost interest on the funds.
We address each of these allegations in turn.
Informed Consent
Rule 1.4 of the Rules of Professional Conduct requires that an attorney give a client sufficient information to participate intelligently in decisions concerning the objectives of the representation. A legal malpractice claim for failure to obtain informed consent, therefore, is based upon allegations that the attorney failed to properly communicate sufficient information to the client in order that the client can make an intelligent decision concerning the objectives of the representation. The issue of lack of informed consent therefore raises the question of with whom Mr. Roth had a duty to communicate regarding the settlement of Haley's lawsuit.
Haley, as an unemancipated minor at the time, had no legal capacity to give her consent to the settlement.[11] La. C.C. art. 1918. Consequently, Mr. Roth had no duty to communicate directly with Haley regarding the settlement. The Roth defendants maintain that the only person Mr. Roth had a duty to communicate with was Mr. Roth's client, Mr. Jones.
Ms. Brunelle, on the other hand, despite the fact that her individual claim against the Roth defendants was previously dismissed due to the lack of an attorney-client relationship with them at the time of the alleged malpractice,[12] and the fact that she settled and dismissed her claims against her own attorneys for legal malpractice, *320 continues to frame her arguments regarding lack of informed consent by discussing the duties of all of the attorneys (both Mr. Roth and the Gainsburgh attorneys) as a joint obligation owed to all of the plaintiffs, with the implication that Mr. Roth had an obligation to obtain Ms. Brunelle's consent on behalf of Haley prior to the settlement. We reject that contention.
Ms. Brunelle, according to statements in her brief, discharged Mr. Roth in 2006 because she "no longer trusted him to handle Haley's claim." Afterwards, Ms. Brunelle did not allow herself or Haley to go unrepresented; she re-hired the Gainsburgh firm to represent her and Haley's interests. Therefore, at the time of the settlement, not only was there no attorney-client relationship between the Roth defendants and Ms. Brunelle, there was an attorney-client relationship between the Gainsburgh attorneys and Mrs. Brunelle. In this scenario, not only would it have been impractical for Mr. Roth to attempt to advise and provide information to someone who no longer trusted him, it would have been unethical and a violation of the Rules of Professional Conduct for him to communicate information relating to the representation of his clients with an adverse party who was represented by other counsel.[13] Rule 1.6(a), Rules of Professional Conduct. Not only did Mr. Roth have no duty to communicate with Ms. Brunelle regarding the settlement of Haley's claim, he was prohibited from doing so.[14] To impose such a duty on Mr. Roth would require him to unethically communicate with Ms. Brunelle, who he knew had given her consent to the settlement on behalf of Haley, in order to determine whether Ms. Brunelle's own attorneys had given her sufficient information regarding the settlement such that her consent was "informed." We find that, in this factual scenario, our law does not impose such a duty upon Mr. Roth.
The Roth defendants introduced into evidence on their motion for summary judgment an affidavit from Mr. Jones stating "... at the time of this agreement to settle, he knew and was advised and informed by Roth that the settlement funds were not allocated among plaintiffs, and that an allocation would have to be made in the future, either by consent of him and Brunelle, or through litigation if they could not agree on how to split the settlement proceeds." His affidavit further stated "... that at all times pertinent hereto, Roth has worked in a diligent, competent and professional manner on behalf of him and Haley ..." and he denies "... that Roth breached the standard of care or committed legal malpractice with regard to his handling of the case ...."
Ms. Brunelle has produced no evidence to contradict Mr. Jones' affidavit; nor do we imagine that she would possibly possess any evidence regarding the private *321 conversations between Mr. Jones and Mr. Roth that would contradict their claims that Mr. Jones gave informed consent on behalf of Haley. We therefore find that there is no genuine issue of fact that Mr. Jones gave informed consent on behalf of Haley and, under the factual scenario presented, he was the only person from whom Mr. Roth had a duty to obtain that consent. Consequently, Ms. Brunelle cannot prevail on Haley's legal malpractice claim as to any act of alleged negligence that involves failure of Mr. Roth to obtain informed consent.
Failure to Disclose Allocation
As we have previously indicated, there is no per se prohibition against entering into an aggregate settlement for joint clients without an allocation among the clients prior to settlement. See Hoffman , supra . Therefore, rather than frame her allegation as one of "failure to allocate," Ms. Brunelle must now frame this allegation as one of "failure to disclose allocation." More precisely, because there is no dispute that there was no allocation prior to settlement, Ms. Brunelle must frame her allegation as one of "failure to disclose the implications of not allocating the fund among plaintiffs prior to settlement." Regardless, the key element is disclosure , which involves communication between an attorney and his client.
As we have stated in our discussion of the "failure to obtain informed consent" allegation, Mr. Roth was prohibited by the Rules of Professional Conduct from discussing this matter with Ms. Brunelle, a non-client who was represented in the matter by other attorneys and who was adverse to the interests of Mr. Jones, who was Mr. Roth's client. Consequently, for the same reasons, Ms. Brunelle cannot prevail on Haley's legal malpractice claim as to any act of alleged negligence that involves Mr. Roth's failure to disclose to her the implications of not allocating the fund among plaintiffs prior to settlement.
Failure to Enforce Settlement
By this allegation, Ms. Brunelle complains that due to the attorneys' failure to enforce the $8.25 million dollar settlement, interest was lost on the funds between the time of the signing of the settlement agreement in October 2008 and the deposit of settlement funds into the court registries in November 2009.
In the ordinary case where parties reach a settlement, there is no need to "enforce the settlement," because the parties, who have consented to the settlement, cooperate in order to perfect the settlement. By the very nature of this allegation, there is something or someone that is preventing consummation of the settlement, which then necessitates enforcement of the settlement.
In this case, it is abundantly clear as to who was preventing consummation of this settlement. On December 5, 2008, only five weeks after the settlement, Mr. Jones filed a motion to establish a supplemental care trust on behalf of Haley. On February 11, 2009, less than four months after reaching the settlement, Ms. Brunelle sent a letter to Mr. Roth in which she indicated that "... I am officially rejecting the proposed settlement amount of $8,250,000.00 ...."[15] On April 14, 2009, four months after Mr. *322 Jones filed his motion to establish supplemental care trust, Ms. Brunelle filed her opposition to the motion.[16] The trial court granted Mr. Jones' motion on April 21, 2009.
On August 11, 2009, in order to avoid "... loss of potential revenue which could be used for the benefit of the minor child," Mr. Jones was compelled to file a motion to enforce settlement against Ms. Brunelle in which he requested that she show cause why an order should not issue enforcing and approving the settlement and why she should not be required to "... execute any and all documents necessary to confect the settlement ...." On September 25, 2009, Ms. Brunelle filed an opposition to this motion, arguing the 22nd Judicial District Court was the appropriate jurisdiction to handle approval of the settlement, and that a hearing was pending in that court.
In October 2009, Ms. Brunelle, represented by new counsel in the 22nd Judicial District Court tutorship proceeding, confirmed her consent to the same $8.25 million dollar settlement that had been agreed to a year earlier. The trial court in the 24th Judicial District Court, based upon that consent, found Mr. Jones' motion to enforce the settlement moot, and approved the settlement. The settlement was then finalized and the funds deposited into the registry of the court.
The lack of an allocation of the aggregate settlement fund, a fact of which both Ms. Brunelle and Mr. Jones were clearly aware at the time of the settlement, provides absolutely no justification for a failure to confect the settlement so that the funds could be deposited and draw interest for the benefit of all three claimants.[17] To the extent that Ms. Brunelle claims that her aforementioned actions were taken due to her having insufficient information to make informed decisions, these allegations relate to claims against the Gainsburgh attorneys, with whom she had an attorney-client relationship, and those claims have been settled.
Ms. Brunelle has presented no evidence to contradict the record evidence showing that the only reason that consummation of the settlement was delayed was due to her refusal to confect the settlement.[18] On this allegation we find no genuine issue of material fact and find that the Roth defendants are entitled to summary judgment as a matter of law.
Law of the Case
Last, we address Ms. Brunelle's sixth assignment of error, which relates to her law of the case argument.
*323 The "law of the case" doctrine is discretionary with the appellate courts, and will not be applied so mechanically as to accomplish manifest injustice. Ficarra v. Mr. Vernon Fire Ins. Co. , 527 So.2d 493, 494 (La. App. 5th Cir. 1988).
On the record before us in the prior appeal, which record has not been made a part of this appeal and is not before us now, this Court previously determined that there were genuine issues of material fact at that time that warranted reversal of the grant of summary judgment in favor of the Roth defendants. On the record before us at this time in this appeal, we find no such genuine issues of material fact and find that the Roth defendants are entitled to summary judgment as a matter of law. To mechanically apply the "law of the case" doctrine simply because this matter was previously before this Court on appeal of a prior summary judgment, would result in a manifest injustice to defendants, and we therefore decline to apply it.
CONCLUSION
For the foregoing reasons, we affirm the trial court's August 19, 2016 judgment granting the Roth defendants' motion for summary judgment and dismissing with prejudice the claims filed by Ms. Brunelle on behalf of Haley Jones. All costs of this appeal are to be paid by the appellant.
AFFIRMED

In the allocation proceedings, Mr. Jones voluntarily relinquished his claims and any money he might have received from the settlement in favor of his daughter, Haley. Consequently, Ms. Brunelle and Haley were the only remaining individuals between whom the settlement funds needed to be allocated, excepting attorneys' fees and costs.

Initially, Mr. Jones and Ms. Brunelle, by consent judgment in the 22nd JDC, were named co-tutors for Haley. However, Mr. Jones was subsequently removed as co-tutor. See In re Jones , 12-1598 (La. App. 1 Cir. 9/10/13), 2013 WL 4828572, 2013 La. App. Unpub. LEXIS 534 ; In re Jones , 12-1486 (La. App. 1 Cir. 9/10/13), 2013 WL 4828559, 2013 La. App. Unpub. LEXIS 535. The trial court in the 22nd JDC, recognizing that Ms. Brunelle's and Haley's interests in the settlement funds were materially adverse, appointed an independent third-party undertutor, retired Judge John Greene, to represent Haley. Counsel for Undertutor Greene has made appearances in the 24th JDC on Haley's behalf, though not at the hearing on the motion for summary judgment that is the subject of this appeal.

Approximately $5 million was deposited in the court registry of the 22nd JDC for the satisfaction of plaintiffs' claims, and approximately $3.25 million went to the 24th JDC court registry for attorneys' fees and costs.

During the pendency of the appeal, this Court, after noting that it did not appear that an attorney had been appointed or designated by the trial court to represent the sole interests of Haley in the allocation or the legal malpractice proceedings, remanded the matter to the trial court for a hearing to consider any potential or actual conflicts of interests that the attorneys in the case might have. Upon remand, the trial court determined that counsel from the law firm engaged by Ms. Brunelle to represent both herself and Haley, Davis & Duncan, LLC, had violated Rules 1.7 and 1.9 of the Code of Professional Conduct by representing parties with materially adverse interests (i.e. , both Ms. Brunelle and Haley) and therefore forbade that firm from representing either party in this case. (The firm appealed their removal; this Court converted that appeal to a writ and denied the writ. See Jones v. ABC Ins. Co. , 13-167 (La. App. 5 Cir. 9/24/13), 122 So.3d 608 ). On remand, the trial court also expressed concern as to Undertutor Greene's protection of Haley's interests. Ultimately, Mr. Prescott Barfield was enrolled as counsel of record to represent Haley's interests only. Ms. Brunelle was enrolled as counsel pro se to represent her individual interests, and was instructed to limit her arguments to her individual claims only. To the extent that she purported to make arguments on Haley's behalf, this Court indicated that it would consider them as amicus curiae only.

The Gainsburgh defendants purportedly reached a confidential settlement agreement with the plaintiffs, though documentation evidencing such an agreement has not been included in the designated record.

An agreement to allocate the funds from the products liability aggregate settlement has purportedly been reached between Ms. Brunelle and Undertutor Greene, representing Haley's interest; again, documents evidencing such an agreement have not been included in the designated record.

Such recognition is all the more pertinent in situations where the third-person beneficiary of the arrangement is not legally competent and our law mandates that certain actions can only be taken on that persons behalf by a designated representative.

Because Ms. Brunelle no longer has an individual claim for legal malpractice against the Roth defendants, and the allocation issue between Ms. Brunelle and Haley has purportedly been resolved, we do not sua sponte again raise an issue of Ms. Brunelle's potential conflict of interest in pursuing this legal malpractice claim on behalf of Haley.

Unfortunately, because Ms. Brunelle chose to designate the appellate record and failed to include the third-party petition against the Roth defendants in that designation, we do not have the benefit of the actual third-party petition to assist us in determining the specific acts of negligence that she alleges. Although we are confident that we accurately discern from the record before us the specific acts of negligence alleged, to the extent we err in precisely identifying the specific acts of negligence, that error must be attributable to Ms. Brunelle. The inadequacy of an appellate record for which an appellant is responsible cannot operate to the detriment of an appellee. Alexander v. Par. of St. John the Baptist , 09-840 (La. App. 5 Cir. 3/23/10), 33 So.3d 999, 1005, rehearing denied , 09-840 (La. App. 5 Cir. 3/23/10), 33 So.3d 999. Without the actual third-party petition, we must discern the specific acts of alleged malpractice from the documents that are in the record and the arguments of the parties.

In response to the first motion for summary judgment by the Roth defendants, Ms. Brunelle suggested that the failure to allocate the funds prior to settlement, in and of itself, violated Rule 1.8(g) of the Rules of Professional Conduct and was therefore an act of negligence by the Roth defendants. However, as this Court made clear in its prior opinion in this case, the Louisiana Supreme Court has stated that, "[a]ggregate settlements of the claims of multiple clients are not per se impermissible, but during the negotiation of the aggregate settlement, the lawyer must confer with all of his clients and fully disclose all details of the proposed settlement, including information about each client's claim and share of the proposed settlement." Jones , 130 So.3d at 41 (citing In Re Hoffman , 03-2499 (La. 9/9/04), 883 So.2d 425, 432-33 )(emphasis added). In the current appeal, Ms. Brunelle appears to have abandoned her argument regarding the failure to allocate, in and of itself, and to restrict her argument to the failure to disclose the implications of the failure to allocate prior to settlement. The latter argument is clearly one that relates only to a failure to obtain informed consent.

We also note that, to the extent Mr. Roth would have otherwise been inclined to attempt to communicate directly with Haley regarding the settlement, her cognitive limitations would have made any such communication impossible.

Ms. Brunelle now maintains that she never intended to file an individual claim for legal malpractice for herself against the Roth defendants.

Clearly the interests of Mr. Jones, who was Mr. Roth's client, were adverse to Ms. Brunelle, since at the time they both still had individual claims for a portion of the aggregate settlement. Even after Mr. Jones relinquished any individual claim he had in favor of Haley, he still indicated his intent to maximize Haley's portion of the settlement, which in effect would minimize any individual claim of Ms. Brunelle.

We note that there is no allegation that Mr. Roth entered into a settlement of Haley's claim without any participation by Ms. Brunelle. The evidence indicates that Ms. Brunelle was involved in the settlement decision and consented on behalf of both herself and Haley to the $8.25 million dollar settlement at the time of the settlement; whether or not her consent was "informed" as to both her individual claim and as to Haley's claim is between her and her attorneys at the Gainsburgh firm, with whom she had an attorney-client relationship. That claim has already been settled.

In her opposition to the Roth defendants' first motion for summary judgment, filed March 4, 2010, Ms. Brunelle makes much of the fact that the Roth defendants, in their motion for summary judgment, called the October 29, 2008 settlement a "tentative settlement," even going so far as to state that this position was "... recently concocted as a defense to the legal malpractice claims ...." Apparently Ms. Brunelle did not recall that a year earlier, in her February 11, 2009 letter to Mr. Roth, she referred to the October 29, 2008 settlement that she was rejecting as a "proposed settlement." (emphasis added).

Ms. Brunelle's opposition was based upon the fees that would be incurred in establishing and managing such a trust.

Ms. Brunelle also acknowledges in her brief that "[l]ong before the mediation took place Jennifer Brunelle began expressing her concerns to Tracey Bryan about entering into a settlement without knowing how the settlement funds were going to be distributed between Haley Jones, Jennifer Brunelle and Shannon Jones and without the issues related to the Special Needs Trust ("SNT") being resolved ..." and that "... [j]ust as expected , following the settlement, major disputes arose regarding the allocation of settlement funds and disposition of the funds for Haley." (emphasis added). If Ms. Brunelle, prior to agreeing to the settlement, expected these disputes to arise, but nonetheless consented to the $8.25 million dollar settlement, the fact that these disputes did arise, as expected by Ms. Brunelle , can provide no justification for delaying consummation of the settlement with the medical device defendants, and depositing the funds into an interest bearing account while the expected disputes were resolved.

In this Court's prior opinion in this matter, we noted that the trial court, in its judgment on the first motion for summary judgment, found that "... the fault for losing interest on the settlement funds lies with Mrs. Brunelle." Jones , 130 So.3d at 38.