ROBERT A. CHAISSON, Judge.
lain this succession dispute, plaintiff Bruce A. O’Krepki, Independent Executor of the Succession of Richard E. O’Krepki, appeals the ruling of the trial court granting a motion for summary judgment in favor of the defendant, Penelope Brodt-mann O’Krepki. For the following reasons, we vacate the judgment of the trial court and remand the case for proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
Richard E. O’Krepki (the “decedent”) died on August 11, 2014, while domiciled in the Parish of Jefferson, State of Louisiana, survived by his wife, Penelope Brodtmann O’Krepki, and two sons from a previous marriage, Bruce A. O’Krepki and Richard A. O’Krepki. The decedent was a successful businessman; at the time of his death, his estate included multiple immovable properties and investments. Prior to their marriage in 1990, the decedent and Mrs. O’Krepki entered into an antenuptial agreement wherein they stated their intention to establish a separate property regime.
|4On July 21, 1992, the decedent and Mrs. O’Krepki together purchased immovable property located at 800 Rue Chartres in the DeLimon Place subdivision in Me-tairie, Louisiana. The O’Krepkis were domiciled at this residence until purchasing and moving to a new home in March 2001. The O’Krepkis retained ownership of the 800 Rue Chartres property, and the title of this parcel reflects the names of both the decedent and Mrs. O’Krepki.
On February 19, 2010, the decedent and Mrs. O’Krepki opened a joint cheeking account with First Bank and Trust. On August 11, 2014, the day of the decedent’s death, Mrs. O’Krepki withdrew the sum of $31,968.84 from the account.
On May 4, 2015, Bruce O’Krepki, as Independent Executor of his father’s estate, filed a petition for declaratory judgment wherein he prayed for the court to *577 declare: (1) that the 1990 Antenuptial Agreement established a valid separate property regime between the decedent and Mrs. O’Krepki and therefore all of the assets possessed at the decedent’s time of death were his separate property, including the fruits and revenues derived from his separate property; (2) that all immovable properties acquired during the marriage between the decedent and Mrs. O’Krepki be deemed to be solely owned by the decedent, and that Mrs. O’Krepki has no interest in those immovable properties; and (3) that the funds withdrawn by Mrs. O’Krepki from the First Bank and Trust account be deemed solely owned by the decedent, and that Mrs. O’Krepki has no interest in said funds.
In response to this petition for a declaratory judgment, Mrs. O’Krepki filed a motion for summary judgment requesting the court hold: (1) that the investment revenues derived from the decedent’s business during the marriage are community property, with Mrs. O’Krepki owed an accounting and reimbursement of business revenues expended for the acquisition, use, improvement, or benefit of the Udecedent’s separate property; (2) that Mrs. O’Krepki is entitled to a one-half interest as co-owner of the immovable property located at 800 Rue Chartres; and (3) that Mrs. O’Krepki is the sole owner of funds in the First Bank and Trust account by way of donation inter vivos.
The motion was heard on October 21, 2015. On November 17, 2015, the trial court issued a ruling granting summary judgment in favor of Mrs. O’Krepki on all three issues. In the accompanying reasons for judgment, the trial court stated that the revenues derived from the decedent’s passive investments during the marriage are community property because the 1990 Antenuptial Agreement did not contain an express declaration of paraphernality reserving the fruits of the separate property as separate as required under Louisiana Civil Code articles 2328 and 2339. The court also found that when the decedent placed his separate funds into a joint account with Mrs. O’Krepki’s name on the account, with the intent that either person had use of the funds, there was a valid donation inter vivos. Finally, the court found that because the property located at 800 Rue Chartres was purchased in the names of both the decedent and Mrs. O’Krepki, she owns one-half of the property at 800 Rue Chartres, but specifically declined to render judgment regarding reimbursement for the purchase price that may be owed, and reserved that evi-dentiary issue for trial.
LAW AND ANALYSIS
Appellate courts review summary judgments de novo using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Quantum Res. Mgmt., L.L.C. v. Pirate Lake Oil Corp., 14-687 (La.App. 5 Cir. 04/15/15), 170 So.3d 259., The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966. After an opportunity for discovery, a motion for summary | ¿judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. Id.
We first address the trial court’s determination that the revenues derived from the decedent’s separate property are community property pursuant to La. C.C. arts. 2328 and 2339.
A matrimonial regime is a system of principles and rules governing the ownership and management of the property of *578 married persons as. between themselves and toward third persons. La. C.C. art. 2525. The Louisiana Civil Code recognizes three kinds of matrimonial regimes: legal, contractual, or partly legal and partly contractual.[1] La. C.C. art, 2326. The legal regime is the community of acquets and gains, and the legal regime governs the ownership and management of property of married persons unless excluded by a matrimonial agreement. La. C.C.’ art, 2327. According -to La. C.C. art. 2328:
A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. Spouses are free to establish by matrimonial agreement a regime of separation of property . or modify the legal regime as provided by law. The provisions of the legal regime that have not been excluded or modified by. agreement retain their force and effect.
The question of whether a matrimonial agreement establishes a separate property regime or a hybrid property regime begins not with a search for declarations absent from the agreement, but rather with 'the language of the agreement itself.[2] The two-page antenuptial agreement signed by the decedent and Mrs. O’Krepki before their marriage contains the following operative language:
The said husband and wife shall be separate in property. Accordingly, they hereby formally renounce those provisions of the Civil Code of 1870 as revised and amended and more particularly those articles 17pertaining to matrimonial regimes, and they establish for themselves the regime of separation of property, (Emphasis added.) ■
The language of this agreement clearly and explicitly creates a separate property regime. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046.
A separate property regime is not governed by those provisions of the Louisiana Civil Code that govern the' legal regime of community of acquets and gains, La. C.C. articles 2334-2369 of Chapter 2, but rather by those provisions in Chapter 3 governing the separation of property regime, La. C.C. articles 2370-2376. The trial court was incorrect in its application of La. C.C. art. 2339 requiring á spouse seeking to reserve the fruits and revenues of his separate property as separate from the community to make a declaration of paraphernality by authentic act or act under private signature duly acknowledged. La. C.C. art. 2339 is applicable to the legal regime of the community of acquets and gains, and it does not apply' to validly created separate property regimes. An authentic act which establishes a separate property regime does not require a separate declaration of paraphernality to reserve or declare the fruits of a separate property regime as separate. The fruits of the decedent’s separate property, including income derived from his investments, remain his separate property. Accordingly, on this issue, Mrs. O’Krepki was not entitled to judgment as a matter of law, and we therefore vacate the ruling of the trial court classifying the fruits of the *579 decedent’s separate property as community property.
We next address the matter of inter vivos donation of the funds held in the O’Krepkis’ joint checking account.
[sAn inter vivos donation is a contract by which a person, called the donor, gratuitously ■ divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it. La. C.C. art. 1468. Pursuant to this article, in order for the donation to be valid, there must be a divestment, accompanied by donative intent. Schindler v. Biggs, 06-0649 (La.App. 1 Cir. 06/08/07), 964 So.2d 1049, 1053. Additionally, acceptance of the.object offered must be made by the donee during the donor’s lifetime and by authentic act (the form required for donations), unless otherwise expressly permitted by law. La. C.C. arts. 1541 and 1544.
The -Civil Code provides two exceptions to the , rule that inter vivos gifts be made by authentic act, the application of which depends on whether the object of the donation is a corporeal or incorporeal movable. If the object of the donation is a corporeal movable, La, C.C. art. 1543 provides that the inter vivos donation..-, of a corporeal movable may be made by delivery of the thing to the donee without any other formality.[3] Succession of Miller, 405 So.2d 812, 819 (La.1981). In Miller, a case with facts very similar to those of the instant case, the Louisiana Supreme Court held that a joint savings account, an incorporeal movable, was not subject to the manual gift exception, but the cash withdrawn from the account, a corporeal movable, could be a manual gift provided that the record establishes that the decedent maintained an intention 'to donate the funds to the donee at the time when the donee possessed the funds in a form susceptible to manual gift. Id. at 813. -Im.portantly, in Miller, the Court upheld the inter vivos donation of funds in a joint checking account where the donee withdrew the funds the day before the decedent died, thereby accomplishing the acceptance of the donation within the donor’s lifetime. Id.-
| flIn the present case, Mrs. O’Krepki acknowledges in her affidavit' submitted in support of her motion for summary judgment, that she withdrew the funds from the joint checking account after the decedent’s death. Having withdrawn those funds after the decedent’s death, they could not have been the object of a manual gift, because the acceptance was not accomplished during the donor’s lifetime.
The second exception to the requirement that inter vivos donations be made in the form of authentic act is found in La. C.C. art. 1550, which is applicable to incorporeal movables. This is the Code article relied upon by the trial court in its determination that the decedent made a valid inter vivos donation of the funds in their joint bank account to Mrs. O’Krepki. In particular, the trial court relied on the language of La. C.C.' art. 1550, which states in part:
The donation pr acceptance of a donation of an incorporeal movable of the kind that is evidenced by a certificate, document, instrument, or other writing, and that is tránsferrable by endorsement or delivery, may be made by authentic act or by compliance with the requirements otherwise applicable to the transfer of that particular kind of incorporeal immovable.
 The trial court made no reference to any “requirements otherwise appli *580 cable” to the transfer of cash funds in the joint banking account.[4] Rather, the trial court cited the case of Succession of Gassiott, 14-1019 (La.App. 3 Cir. 02/04/15), 159 So.3d 521, for the principle that once a spouse’s separate property is placed into a joint account, and the other spouse’s name is listed as an account holder with the intent that the other spouse use the funds, there was a valid donation inter vivos. We find that Succession of Gassiott does not stand for the proposition that the mere establishment of a joint checking account by spouses, and the subsequent deposit of separate funds therein, is sufficient to effect a valid inter | wvivos donation of those funds. In Louisiana, funds deposited into a joint bank account remain the property of its original owner and his or her estate at death, absent an authentic act of donation. Succession of Elie, 10-525 (La.App. 3 Cir. 11/03/10), 50 So.3d 262, (citing Succession of Fralick v. Sec’y of Dept. of Revenue, 529 So.2d 159 (La.App. 3rd Cir. 1988)). The right of withdrawal, or having one’s name listed on the account, is not tantamount to ownership of the funds therein. Id.; Cantrell v. Pat O’Brien’s Bar, 97-0545 (La.App. 4 Cir. 01/07/98), 705 So.2d 1205.
We read the holding in the Succession of Gassiott as consistent with this jurisprudence. In that case, the Third Circuit upheld the trial court’s finding of a valid inter vivos donation of a husband’s separate funds in a joint checking account where the husband and wife had a separ rate property regime. The Third Circuit agreed that the donative intent of the husband was clear because the husband, in the two weeks prior to his death, specifically instructed the wife to leave his bedside at the hospital and withdraw the funds from the joint account, and the husband took further steps to keep the existence of the account secret from his children in an effort to ensure that his wife would receive the funds he set aside for her in the account. The wife proceeded to withdraw the balance of the joint savings account four days before her husband’s death. The Third Circuit cited the supreme court’s decision in Miller in holding that there was a valid transfer of the funds in the joint account through conversion of the funds to a corporeal movable upon withdrawal, in a case where such conversion was coupled with clear evidence of the donor’s intent and accomplished within the donor’s lifetime. Therefore, the donation in Gassiott clearly fell under the manual gift exception to the rule that inter vivos donations be made by authentic act.
InThe Louisiana Supreme Court has stated that the burden of proving the donation is on the donee, and this proof must be strong and convincing. Butler v. Reddick, 431 So.2d 396 (La.1983), (citing Succession of Woolfolk, 225 La. 1, 71 So.2d 861, 864 (1954)). The only evidence submitted by Mrs. O’Krepki in support of her position with regard to the inter vivos donation of the funds in the joint cheeking account is a document from First Bank and Trust establishing the joint checking account and an affidavit of Mrs. O’Krepki, which states that the joint account was opened in both her and her husband’s names and that she withdrew funds from the account in the amount of $31,968.84 on *581 August 11, 2014, after Mr. O’Krepki died, upon concern that the bank might freeze the account.[5]
Upon de novo review, we find that, at this time, there are genuine issues of material fact as to whether the decedent had the requisite donative intent and whether Mrs. O’Krepki properly accepted an inter vivos donation of the funds in the joint bank account while the decedent was alive. It was error for the trial court to grant Mrs. O’Krepki’s- motion for summary judgment on this issue. Accordingly, we vacate that portion of the trial court’s judgment that declares a valid inter vivos donation of the funds in the First Bank and Trust account.
Lastly, we turn to the issue of ownership of the property located at 800 Rue Chartres. Neither party disputes that the property located at 800 Rue Chartres was purchased in the name of both the decedent and Mrs. O’Krepki. La. C.C. art. 797 states that “[o]wnership of the same thing by two or more persons is ownership in indivisión. In the absence of other provisions of law or juridical act, the shares of 112all co-owners are presumed to be equal.” In its ruling on the motion for summary judgment, the trial court held that Mrs. O’Krepki owns 50% of the property at 800 Rue Chartres, and declined to render judgment regarding reimbursements owed under La. C.C. art. 806 for the purchase price and “reservefd] that evi-dentiary issue for trial.” The respective parties’ contributions towards the purchase price of the property in this case is not an evidentiary issue which may be separated from the determination of ownership when there is a dispute between the co-owners. See Deklerk v. Deklerk, 14-0104 (La.App. 4 Cir. 07/29/15), 174 So.3d 205. Pursuant to La. C.C. art. 806, a co-owner of property held in indivisión is entitled to reimbursement for expenses of maintenance and management of the property, not the reimbursement of funds used towards the purchase price of the property.[6]
The parties have introduced as evidence of ownership the act of sale which both the decedent and Mrs. O’Krepki signed as co-purchasers. This act of sale was confected in authentic form as required under La. C.C. art. 1839. La. C.C. art. 1835 states that an authentic act constitutes the full proof of the agreement it contains, as against the parties, their heirs, and successors by. universal or particular *582 title,[7] When such an act is silent as to the proportions of the respective-interests-of the co-vendees listed, prior cases have allowed the' introduction of parol evidence for. the .limited purpose of determining those-respective interests. Succession of LeBlanc, 577 So.2d 105, 107 (La.App. 4th Cir,1991), (citing Oxford v. Barrow, 43 La. Ann. 863, 9 So. 479 (1891); Manning v. Harrell, 59 So.2d 389 (La.App. 1 2nd Cir. 1952); and Succession of Washington, 140 So.2d 906 (La.App. 4th Cir.1962)). In such instances where-the property is acquired by several- vendees and their specific shares are ■ not stipulated in the act of conveyance, a presumption arises that such interests- shall be considered equal. LeBlanc, 577 So.2d at 107. The presumption is rebuttable, to the extent that the court will decree ownership in proportion to the amount and consideration contributed by each of the vendees. Id.
" Because the title clearly áhóws the dece-dént and Mrs. 'O’Krepki as co-owners, ’the burden shifted to the appellants to controvert the express language of the authentic act. In support of their position, appellants introduced Mrs. O’Krepki’s responses to ’requests for the production of docu-ménts wherein she replied “none” to a request for copies of any and all documentation evidencing payment from her separate property of any portion of the purchase price of the immovable property at 800 Rue Chartres. However, responding that she has no documentation evidencing a contribution to the purchase price does not equate to an acknowledgement that she made no such contribution. Furthermore, even if Mrs. O’Krepki made no monetary contribution toward the purchase price, questions remain as. to whether she made non-monetary contributions consistent with her respective contribution to the marriage, and whether the parties mutually intended at the time of purchase that Ms. O’Krepki was an equal co-owner of the property. See Deklerk, 174 So.3d at 210.
Upon our de novo review, we find that genuine issues of material fact remain as to Mrs. O’Krepki’s ownership interest in the property. Accordingly, we vacate that portion of the trial court’s judgment declaring the property at 800 Rue Chartres to be 50% co-owned by Mrs. O’Krepki.
^CONCLUSION
For the foregoing reasons, we vacate in its entirety the November 17, 2015 judgment of the trial court which granted Mrs. O’Krepki’s motion for summary judgment, and we remand this .case for further proceedings consistent with this opinion,

VACATED AND REMANDED

. These regimes are commonly known as community, separate, or hybrid property regimes, respectively.

. See La. C.C. art. 2328 1979 Revision Comment (b), "[a] matrimonial agreement is governed by the general rules of conventional obligations unless otherwise provided in this Title.”

. This is also known as the manual gift exception to the rule of La. C.C. art. 1541 requiring ■that inter vivos donations be accomplished by authentic act.

. The language of this Code article suggests that the "requirements otherwise applicable” are those set forth in Chapter 3 and Chapter 9 of the Louisiana Commercial Laws which govern negotiable instruments and secured transactions, respectively. See La. C.C. art. 1550, 2008 Revision Comments (c), "[a]t all times, donative intent is required, but assuming donative intent, this Article does not change the rule that an attempted donation of cash by use of a personal check does not constitute a completed gift unless and until the check is cashed.”

. In support of their opposition to Mrs. O’Krepki’s motion for summary judgment, appellants attached as evidence an affidavit of Julian P. Brignac, Jr., an attorney and accountant who provided services to the decedent. In that affidavit, Mr. Brignac makes statements concerning the decedent’s financial affairs, including a statement that the decedent never intended to gift or donate any monetary sums on deposit to Mrs. O’Krepki. Prior to the hearing on the summaty judgment motion, Mrs. O'Krepki filed a motion to strike Mr. Brignac’s affidavit on the grounds and for the reasons that the affidavit is based on hearsay. There is no indication in the record that the court ruled upon this motion. The transcript from the October 21 summary judgment hearing indicate that Mr, Brignac swore a second affidavit, which was admitted into the record. The trial court did not grant the motion to strike either of Mr. Brignac’s affidavits.

. La. C.C. 806 states:
A co-owner who on account of the thing held in indivisión has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares. If the co-owner who incurred the expenses had the enjoyment of the thing held in indivisión, his reimbursement shall be reduced in proportion to the value of the enjoyment.

. While the trial court invoked, the public records doctrine in her reasons for judgment, we note,that.the primary, purpose,of the public records doctrine protects third parties against unrecorded interests for transactions involving immovables. Cimarex Energy Co. v. Mauboules, 09-1170 (La.04/09/10), 40 So.3d 931, 943. Because the instant dispute involves the - determination of proportions of ownership interest between co-owners, not third parties, the public records doctrine is not implicated by the facts of .this case.