LUZ ALEYDA AGUILAR

VERSUS

KEVIN WORK, M.D., ADRIAN J. COLEMAN,
M.D., NORMAN TORRES, M.D., CANAL
WOMEN'S CLINIC, OCHSNER MEDICAL
CENTER-WESTBANK, LOUISIANA
PATIENT'S COMPENSATION FUND,
LOUISIANA MEDICAL MUTUAL
INSURANCE COMPANY, ABC INSURANCE
COMPANY, DEF INSURANCE COMPANY,
UVW INSURANCE COMPANY, AND XYZ
INSURANCE COMPANY

NO. 20-CA-58

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 737-590, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

December 30, 2020

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Robert A. Chaisson

**AFFIRMED**

**RAC**
**SMC**
**FHW**

COUNSEL FOR PLAINTIFF/APPELLANT,
LUZ ALEYDA AGUILAR
    James E. Shields, Sr.

COUNSEL FOR DEFENDANT/APPELLEE,
OCHSNER CLINIC FOUNDATION
    Don S. McKinney
    Diana C. Surprenant

**CHAISSON, J.**

In this case arising from claims of negligent credentialing and medical malpractice, Luz Aleyda Aguilar appeals a judgment of the trial court granting a motion for summary judgment in favor of Ochsner Clinic Foundation ("Ochsner") and dismissing Ochsner from the case. For the following reasons, we affirm the judgment of the trial court.

**BACKGROUND**

On April 17, 2014, Ms. Aguilar filed a petition for damages naming as defendants Dr. Kevin Work, Dr. Adrian Coleman, Dr. Norman Torres, the Canal Women's Clinic, Ochsner, the Louisiana Patient's Compensation Fund, and various insurers for purported incidents of negligence and medical malpractice during the course of her prenatal and postnatal care around the time of the birth of her child. Regarding Ochsner in particular, Ms. Aguilar alleged in her first and subsequent amending petition that Dr. Coleman, who "botched" her vaginal delivery on May 26, 2009[1], was operating under a suspended medical license, a fact which Ochsner knew or should have known. Ms. Aguilar also alleged that Ochsner was negligent in its supervision of Dr. Work, Dr. Coleman, and Dr. Torres, in particular by allowing suspended and/or unlicensed parties to provide medical treatment without the patient's consent, and in failing to require the discharging physician to examine Ms. Aguilar in person immediately before she was discharged from the hospital.

On November 14, 2016, Ochsner filed a motion for summary judgment on the grounds that Ms. Aguilar lacked evidence or expert testimony sufficient to meet her burden of proof on issues of the standard of care, breach of the standard of care, and causation with regard to the treatment rendered by Ochsner. Ochsner

---

[1] Specifically, she alleges Dr. Coleman negligently delivered her child vaginally instead of by caesarian section, and performed an episiotomy in a negligent manner, which in turn caused a fourth degree episiotomy dehiscence requiring corrective surgery.

also argued that, contrary to Ms. Aguilar's allegations that Ochsner was negligent in its supervision of Dr. Work, Dr. Torres, and Dr. Coleman, none of those doctors were employed by Ochsner at the time of the alleged incident. In support of its motion, Ochsner provided the opinion of the medical review panel convened to consider Ms. Aguilar's medical malpractice claims, which stated that the evidence presented to the panel did not support the conclusion that Ochsner failed to meet the applicable standard of care as charged in the complaint.

The opinion of the medical review panel found:

1. There is nothing in the records presented to the panel to review to indicate that the hospital and/or its employees deviated from the standard of care.

2. Assuming that Dr. Coleman had active obstetric privileges, there was no breach in the standard of care.

3. Discharge examination and instructions were properly performed and carried out by Ochsner staff and Dr. Work. Dr. Work saw the patient within twenty-four hours of discharge.

In opposition to Ochsner's motion, Ms. Aguilar argued that her claim of negligent credentialing against Ochsner sounded in general negligence rather than medical malpractice, and therefore no expert testimony was required. Ms. Aguilar also argued that Ochsner had repeatedly obstructed her efforts to discover what Ochsner knew about Dr. Coleman's credentials at the time he performed Ms. Aguilar's delivery at the Ochsner facility.[2] Ochsner acknowledged that Dr. Coleman was credentialed and provided privileges to operate at its facility from May 2, 2006, through September 22, 2009, but refused to provide any documents concerning his credentialing, claiming that such documents regarding Dr. Coleman's privileges at Ochsner are confidential and protected from disclosure under the Louisiana Peer Review Statute, La. R.S. 13:3715.3(A).

_____

[2] Ms. Aguilar also argued that a previous motion for summary judgment granted in favor of Louisiana Medical Mutual Insurance Company ("LAMMICO") supported her claim that Ochsner was negligent in allowing an unlicensed, uninsured doctor to provide medical treatment in its facilities.

Prior to ruling on Ochsner's motion for summary judgment, Ms. Aguilar filed a Motion to Compel 1442 Corporate Deposition of Ochsner, which the trial court granted on March 9, 2017. These corporate depositions were taken in May and December of 2017.

On June 6, 2019, Ochsner filed a second motion for summary judgment wherein it again argued that Ms. Aguilar lacked sufficient evidence to support one or more essential elements of her claims, and therefore her claim should be dismissed.

In opposition to this second motion, Ms. Aguilar provided copies of the deposition of Ochsner's corporate representative, Joan Rooney, the deposition of Lisa Ballard, RN, a labor and delivery nurse on duty at the time of Ms. Aguilar's delivery, a copy of Ms. Aguilar's own deposition, and the affidavit of Dr. Michael Makii, who is board certified in the field of OBGYN, in which he opined that Dr. Torres, Dr. Coleman, and Dr. Work breached the standards of care in their treatment of Ms. Aguilar.[3]

Ms. Aguilar also included a Consent Order (No. 08-I-775) from the Louisiana State Board of Medical Examiners which stated: the Board opened an investigation of Dr. Coleman after receiving notice that, in August 2008, Tulane University Hospital & Clinic had suspended Dr. Coleman's operative vaginal delivery privileges following the death of an infant during a delivery performed by Dr. Coleman; the Board learned that Dr. Coleman's clinical privileges at Touro Infirmary were suspended on August 19, 2009, as a result of its findings that Dr. Coleman had an unacceptably high number of absences from obstetrical deliveries, did not adequately evaluate and care for his patients in the labor and delivery unit,

_____

[3] Dr. Makii stated further, "It is astounding to me that the Ochsner Clinic would allow the Doctors who cared for Ms. Aguilar to practice the type of medicine and patient care displayed here. This clearly demonstrates lack of oversight and peer review on the part of Ochsner Clinic. To allow physicians to be negligent in the care of patients, as well as to commit malpractice and fraud without consequences places a portion of the responsibility on the Ochsner Clinic."

and failed to document his patient care adequately and accurately. Per the terms of this Consent Order, the Board placed Dr. Coleman on a three year probation, which included a strict prohibition on all operative vaginal delivery procedures.

Following a hearing on Ochsner's motion for summary judgment, the trial court, granted the motion in favor of Ochsner and dismissed all of Ms. Aguilar's claims against Ochsner.[4] This timely appeal follows.

**DISCUSSION**

Appellate courts review summary judgments *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *In re Succession of O'Krepki*, 16-50 (La. App. 5 Cir. 5/26/16), 193 So.3d 574, 577. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966. If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id.* The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. *Id.*

---

[4] At the same hearing, the trial court also heard a motion for summary judgment filed by Dr. Work that was denied in the same judgment. That portion of the judgment is not before us in this appeal.

*Medical Malpractice Claims Against Ochsner*

The Louisiana Medical Malpractice Act and its limitations on tort liability for a qualified health care provider apply strictly to claims arising from medical malpractice, and all other tort liability on the part of the qualified health care provider, is governed by general tort law. *Bonilla v. Jefferson Par. Hosp. Serv. Dist. #2*, 16-0234 (La. App. 5 Cir. 12/28/16), 210 So.3d 540, 547, *writ denied*, 17-0187 (La. 4/7/17), 215 So.3d 235. Under La. R.S. 40:1231.1(A)(13), malpractice means "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient … and also includes all legal responsibility of a health care provider arising from acts or omissions … in the training or supervision of health care providers …"[5]

Ms. Aguilar provided no evidence of an employment relationship between Ochsner and Dr. Work, Dr. Coleman, and Dr. Torres, the doctors who treated Ms. Aguilar. Ms. Aguilar apparently concedes that these doctors are not employees of Ochsner. Furthermore, she provided no other evidence that Ochsner had the authority to supervise or direct these doctors in their care of Ms. Aguilar.[6] At the hearing, counsel for Ms. Aguilar argued that Ochsner was negligent for allowing Ms. Aguilar to be discharged from the hospital *via* telephone, which one witness for Ochsner testified would be a breach of their discharge policies and procedures. However, the deposition testimony of the nurses working at Ochsner indicates that Dr. Work examined Ms. Aguilar the evening prior to her discharge from the

---

[5] This definition of malpractice, found in the statute previously designated La. R.S. 40:1299.41, has remained unchanged since the time of Ms. Aguilar's alleged injury in 2009.

[6] To the contrary, Ochsner provided an affidavit from its Manager of Medical Staff Services, Ms. Tammy Tobin, which stated that Ochsner did not have the authority to direct Dr. Coleman or Dr. Work in their care and treatment of patients or to oversee and supervise those doctors in the exercise of their professional judgments.

hospital the next day. Ms. Aguilar has provided no evidence to support her claim that she was discharged *via* telephone or that any of the nurses or staff working for Ochsner were negligent in their provision of services to her. The affidavit of Dr. Makii, which primarily addresses the negligence of the doctors who provided care to Ms. Aguilar, is not sufficient evidence to support her malpractice claims against Ochsner. Consequently, we agree with the trial court's determination that there are no genuine issue of material facts as to Ms. Aguilar's allegations of medical malpractice against Ochsner and that Ochsner is entitled to summary judgment as to these claims.

*Negligent Credentialing*

A claim for negligent credentialing sounds in general tort and does not fall within the provisions of the Louisiana Medical Malpractice Act. *Matranga v. Par. Anesthesia of Jefferson, LLC*, 17-73 (La. App. 5 Cir. 8/29/18), 254 So.3d 1238, 1242, *writ denied*, 18-1561 (La. 2/18/19), 265 So.3d 772 (*citing Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 16-0846 (La. 10/19/16), 218 So.3d 513, 527); *see also Danos v. Minnard*, 19-268 (La. App. 5 Cir. 8/28/19), 279 So.3d 486, 491.

Ms. Aguilar argued that, but for Ochsner credentialing Dr. Coleman and granting him privileges for the use of its facilities, she would not have been subject to his alleged malpractice in the delivery of her baby. She further alleged that Ochsner was negligent in continuing to grant Dr. Coleman privileges even though he was under investigation by the Louisiana State Board of Medical Examiners and had his privileges revoked at neighboring Tulane University Hospital & Clinic following the death of a baby during delivery in August of 2008.

The Consent Order from the Board of Medical Examiners is the only evidence offered in support of Ms. Aguilar's negligent credentialing claim. However, as the trial court noted in its written reasons for judgment, there is no evidence in the record that Ochsner knew or should have known of Dr. Coleman's

loss of privileges at other hospitals in 2008 or of the active investigation of the Board of Medical Examiners. Upon our *de novo* review, we agree with the trial court's determination that, absent such evidence, Ms. Aguilar will be unable to prove her claim for negligent credentialing against Ochsner. Accordingly, summary judgment was also properly granted in favor of Ochsner as to these claims.

**CONCLUSION**

Upon our *de novo* review, we find no genuine issues of material fact as to Ms. Aguilar's medical malpractice or negligent credentialing claims against Ochsner, and that Ochsner is entitled to judgment as a matter of law as to these claims. Accordingly, we affirm the judgment of the trial court granting the motion for summary judgment and dismissing Ms. Aguilar's claims against Ochsner with prejudice.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 30, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 20-CA-58

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
JAMES E. SHIELDS, JR. (APPELLANT)       ELIZABETH R. BORNE (APPELLEE)        PAUL A. TABARY, III (APPELLEE)
DIANA C. SURPRENANT (APPELLEE)          DON S. MCKINNEY (APPELLEE)

### MAILED

KEVIN G. WORK, M.D.  (APPELLEE)
200 WEST ESPLANADE AVENUE
SUITE 410
KENNER, LA 70065

JUSTIN W. STEPHENS (APPELLEE)
LACY TABARY (APPELLEE)
ATTORNEYS AT LAW
THREE COURTHOUSE SQUARE
CHALMETTE, LA 70043

SHELLY S. HOWAT (APPELLEE)
ATTORNEY AT LAW
701 POYDRAS STREET
SUITE 4500
NEW ORLEANS, LA 70139

LUZ ALEYDA AGUILAR, I.P.P.
(APPELLANT)
709 HUNTLEE DRIVE
NEW ORLEANS, LA 70131