GLADYS S. GAUTREAUX

VERSUS

WEST JEFFERSON MEDICAL CENTER,
ET AL

NO. 21-C-13  C/W 21-C-20

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 789-220, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

April 28, 2021

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Robert A. Chaisson,
Hans J. Liljeberg, and John J. Molaison, Jr.

**AFFIRMED IN PART; REVERSED IN PART**
    **JJM**
    **RAC**
    **HJL**

COUNSEL FOR PLAINTIFF/RESPONDENT,
GLADYS S. GAUTREAUX
Christian P. Silva
William R. Penton, III

COUNSEL FOR DEFENDANT/RELATOR,
EMERY A. MINNARD, MD
Bryan J. Knight
Mark E. Kaufman

**MOLAISON, J.**

Dr. Emery Minnard, the relator in 21-C-13, seeks a review of the trial court's denial of his motion for summary judgment in a medical malpractice case filed by Gladys Gautreaux. Ms. Gautreaux filed a writ in 21-C-20 for supervisory review of the trial court's ruling in the *Daubert*[1] motion filed by Dr. Minnard seeking to exclude the testimony of Ms. Gautreaux's expert, Dr. Cameron Grange. As the findings from the *Daubert* hearing are related to the issue of whether there are issues of contested fact necessary to avoid summary judgment, we ordered the consolidation of these writs. After allowing the parties to present their arguments before this Court, we find that the trial court did not err in excluding the testimony of Dr. Grange regarding the standards of care in the fields of general surgery and dermatology, thus Ms. Gautreaux has failed to present evidence showing a genuine issue of material fact regarding a breach in the standard of care provided by Dr. Minnard which necessitates a granting of his motion for summary judgment.

**Factual Background**

On Sunday, October 5, 2014, the plaintiff, Gladys Gautreaux, was diagnosed with acute cholecystitis (inflammation of the gall bladder) at West Jefferson Medical Center's Emergency Room where she had reported pain at a level 9 out of 10. The defendant, Dr. Emery Minnard, a board-certified general surgeon, performed a laparoscopic cholecystectomy on the plaintiff on October 6, 2014. On the morning of the surgery, the plaintiff applied Hibiclens, a skin cleanser containing chlorhexidine, to her abdomen in preparation for surgery. At 1:49 P.M. the defendant was notified that the plaintiff's abdomen was bright red with a questionable rash. After determining that she was not having trouble breathing, the defendant proceeded to surgery and applied Chloraprep antiseptic (also containing chlorhexidine). After surgery, at 6:30 P.M., the surgical resident, Dr. Samantha

---

[1] *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

21-C-13 C/W 21-C-20                    1

Zeringue, ordered Intravenous (IV) Benadryl for allergy symptoms. Her progress notes of October 7, 2014 at 5:00 P.M. stated that "rash on trunk slightly worsening and itches more; will hold discharge; apply Benadryl cream and changed IV Benadryl." On October 8, 2014, Dr. Zeringue ordered a topical steroid. When the rash started to blister and spread to the plaintiff's legs and knees, Dr. Douglas Koppel, a dermatologist, was consulted for care at 9:45 A.M. Dr. Koppel examined the plaintiff at 12:07 P.M. and 5:38 P.M. and diagnosed her with severe contact dermatitis (defined as an itchy rash, redness, and blister) caused by Hibiclens. He treated the plaintiff with steroids (Kenalog, Celestone, Clobetasol); moisturizer (Aquafor); and a steroid pill (Prednisone). Dr. Koppel assessed her again before her discharge on October 9. When he followed up the next week on October 14, 2014, Dr. Koppel noted her rash was improved and healing, and he recommended she continue her treatment with a follow-up in four weeks.[2]

**Procedural History**

The plaintiff sued West Jefferson Medical Center and the defendant, Dr. Minnard, claiming medical malpractice in that Dr. Minnard failed to investigate, respond, and render care to the allergic reaction to chlorhexidine. The plaintiff relied on the report of her expert Dr. Cameron Grange, a family practitioner from Maine, to establish her case that the defendant caused damage to the plaintiff by deviating from the proper standard of care in response to the rash.

Dr. Grange opined that the plaintiff had irritant contact dermatitis due to the presence of blisters, as opposed to allergic contact dermatitis which would have more welts and hives. Dr. Grange stated in his deposition and report that the standard of care, when presented with a rash in "pre-op", would be to examine the

---

[2] Despite her previous progress, the plaintiff returned to Dr. Koppel on October 17, 2014 with a rash related to an allergic reaction to antibiotics which Dr. Koppel described as a "new and separate condition." The plaintiff continued to see Dr. Koppel for treatment until January 2015 for eczematous dermatitis on thighs which was "completely unrelated" to the rash at issue.

patient to decide whether it is safe to proceed or if any other measures are needed, and to document it.  He stated that contact dermatitis would not necessarily be a contraindication to the surgery.  He opined that Dr. Minnard should have switched to a different antiseptic (such as iodine) when he saw the reaction and that his failure to act to try a different agent, so that the chlorhexidine would not continue to damage the patient, was a deviation from the standard of care.  Dr. Grange opined that the standard of care after the operation would be to inspect the area and comment on the absence or presence of a rash and initiate treatment or workup. Upon review of the records, he believed that 41 hours passed before documentation of consultation with dermatology.  He submitted that the failure to evaluate and diagnose the reaction when it occurred in pre-op caused it to worsen and if it had been treated, it may not have developed into a blistering rash.  Dr. Grange opined the defendant fell below the standard of care in not giving her proper discharge instructions on how to care for her blisters and what to watch for to avoid infection.

Dr. Minnard filed a *Daubert* motion on October 13, 2020 stating that the plaintiff's expert, Dr.  Grange's knowledge, training, education and experience fail to satisfy the requirements of La. R.S. 9:2794 and La. C.E. art. 702 concerning the care at issue.  He alleged that Dr. Grange could not offer opinions on the dermatological and general surgery aspects of this case and that he incorrectly stated facts and conclusions.

At the hearing, the curriculum vitae of Dr. Grange revealed that he has been practicing medicine for ten years as a family practitioner in Maine where he is employed by Fish River Rural Health Center as an outpatient physician.  He is on the quality assurance committee which regularly reviews medical records for errors.  Dr. Grange's deposition revealed that he regularly conducts "pre-operative clearance" on patients at least weekly where he reviews the medical history to

identify or resolve conditions that may impact surgical or post-surgical course, though he stated this is different from "pre-operative preparation" which is the last review of the patient in the pre-op bay to be sure it is safe to proceed with surgery. This entails a physical exam by the surgeon with the nurse and anesthesiologist reviewing the medical history, checking medications, allergies, and when the patient last ate. Dr. Grange last performed "pre-operative preparation" over two years ago for his cesarean patients, which would occur "every three to four months." Dr. Grange had 18 weeks of surgical training outside of medical school, where he was the primary surgeon in 10 cholecystectomies, and 3 months of surgical obstetrics training.

In its December 14, 2020 ruling after the *Daubert* hearing, the trial court held that Dr. Grange is not an expert in general surgery or dermatology. He is not qualified to provide an opinion on the standard of care for any doctor performing general surgery because he would not have treated the plaintiff if she presented with these issues. Additionally, because he does not provide post-operative care, he cannot provide expert testimony in that area. As to the areas of surgical preparation, allergy treatment, and general family practice, he may have experience in those fields, so the trial court found that if qualified at trial in those areas, he may testify as an expert. The judge stated she would make that determination at trial.

Dr. Minnard filed a motion for summary judgment on October 13, 2020. In support of the motion, he introduced the August 8, 2018 expert opinion of the medical review panel which found that Dr. Minnard did not deviate from the standard of care as the defendant did not believe the skin discoloration was an allergic reaction, the rash was in other areas than where chlorhexidine was used, dermatology was appropriately consulted, and there was no FDA warning of allergic skin reactions until February of 2017.

The defendant also introduced Dr. Bernard Jaffe's August 10, 2019 report as an exhibit to Dr. Grange's deposition in support of the motion for summary judgment.[3] Dr. Jaffe is a professor of surgery at Tulane University and the Director of the American Board of Surgery for over twenty years. He stated that the skin discoloration noted pre-op was not a contraindication to the use of chlorhexidine as a skin prep agent. The rash extended beyond the area prepped with chlorhexidine. There was no reason to suspect that the plaintiff had or would develop a reaction or allergy. He opined that there was no hematological evidence in the medical record of an allergic reaction. His opinion is that the defendant consulted Dr. Koppel in a timely fashion. There was no FDA warning in 2014 with regards to allergic reactions to chlorhexidine. Dr. Jaffe found that with appropriate treatment the rash disappeared and none of the treatments and decisions of the defendant contributed to or resulted in any damage to the plaintiff.

The defendant's affidavit of October 12, 2020 was offered into evidence. The defendant is a board-certified general surgeon and was assisted in his treatment of the plaintiff by two surgical residents, Dr. Joana Ochoa and Dr. Samantha Zeringue. He stated that it was apparent that the plaintiff was not experiencing an anaphylactic reaction and surgery was a "matter of urgency" which took precedence over addressing her reaction which was a "questionable rash." When the reaction progressed into an obvious rash after the surgery and the plaintiff complained of itching, Dr. Zeringue ordered IV Benadryl at 6:30 P.M. on October 6 and consulted Dr. Koppel at 9:45 A.M. on October 8.

The deposition of Dr. Koppel, a board-certified dermatologist and the treating dermatologist in this case, in which he was accepted as an expert in dermatology and dermatological surgery, was included as an exhibit to the motion

---

[3] Dr. Jaffe's signed report was not in the proper form to be considered as evidence on summary judgment under La. C.C.P. art. 966; however, it was submitted by the defendant without objection by the plaintiff. *Battaglia v. Chalmette Medical Center*, 12-339 (La. App. 4 Cir. 10/17/12), 126 So.3d 524, 528-9 (FN 1).

for summary judgment. Dr. Koppel testified that he has performed five surgeries a week for the past 17 years, mostly in-office 30-minute procedures. As to the standard of care in providing treatment post-surgery, Dr. Koppel stated "it's really up to the surgeon." He testified that immediately after surgery, the actions taken depend on symptoms and what the area looked like: "If rash got worse, you could start a topical steroid and give benadryl which I think they did." Dr. Koppel stated the allergic reaction to Hibiclens is rare. He stated that a surgeon is not likely to notice a reaction while in surgery because it will be delayed as allergic contact dermatitis can take up to two to three days to show up after exposure. He testified it was difficult for even a dermatologist to know what is causing a particular rash. In reviewing the medical records, he stated that while it was significant that the abdomen was "bright pink coloring" the fact that there were "no complaints of itching. . .tells me that it's – it's not as significant." As to post-operative care claims relating to how long a surgeon should wait to consult dermatology, he testified "I think that it seemed like their time frame was fairly diligent in terms of how quickly they reacted." Dr. Koppel opined that in this case, the administration of IV Benadryl and a topical steroid is an acceptable initial treatment for allergic contact dermatitis. He testified that it is normal for a physician to wait two days as a rash progresses before consulting him because the physicians usually try to manage it by themselves. When asked if there was anything Dr. Minnard could have done as a surgeon to lessen the severity of the rash, he testified "I wouldn't think that there was anything he could have done at that point." He opined that the discharge summary was consistent with his plan and the plaintiff did improve following it.

The trial court judge denied the motion for summary judgment, finding that there was a question of material fact as to the standard of care due to Dr. Koppel's expert dermatologist testimony that he was not sure if Dr. Minnard did the right

thing or what could have been done differently, so the trier of fact must determine the weight of Dr. Koppel's testimony.

**Discussion**

21-C-20 *Daubert* ruling

The plaintiff seeks supervisory review of the trial court's judgment granting the defendant's *Daubert* motion in part. She alleges that the motion should have been denied outright because her expert witness is qualified to testify in all aspects of this case and that the trial court was wrong in prohibiting her witness from testifying about post-surgical care if it was acceptable to allow him to testify about pre-surgical care and general medical care.[4]

The standard of review of a district court's decision about whether to admit expert testimony is an abuse of discretion. *See Mistich v. Volkswagen of Germany*, 95-939 (La. 01/29/96) 666 So.2d 1073, 1079. The trial court has great discretion in deciding which witnesses are qualified as experts; the physician's knowledge of the requisite subject matter determines whether the specialist may testify as to the degree of care which should be exercised. *Seagers v. Pailet*, 95-52 (La. App. 5 Cir. 5/10/95), 656 So.2d 700, 711, *writ denied* 96-2730 (La. 1/6/967), 685 So.2d 117. A court shall consider whether an expert witness is board certified, has substantial training or experience in an area of medicine relevant to the claim, or actively practices in that area. La. R.S. 9:2794(D)(3).

The trial court found that Dr. Grange was not qualified to give an expert opinion as to the standard of care in the fields of general surgery or dermatology. La. R.S. 9:2794 (D)(1)(c) requires an expert witness to have experience or training that qualifies him to offer an expert opinion regarding the accepted standards of

---

[4] Contrary to the plaintiff's assertion, the trial judge did not find that Dr. Grange was qualified to give an expert opinion as to pre-surgical and rash care, but she ruled that the plaintiff may offer Dr. Grange as an expert in surgical preparation, allergy treatment, and general family medicine and that she will make a determination at trial on whether Dr. Grange can render his opinions as to the specific questions asked at that time.

medical care. Dr. Grange is a general practitioner and outpatient physician who does not actively perform surgeries or provide post-operative care. He has not performed a gallbladder removal surgery in the past 10 years. Dr. Grange had only 30 weeks of surgical training, in contrast to the five years of training required in surgical residency. Furthermore, he is not board-certified in surgery. Although Dr. Grange testified that he treats "allergy problems," he is not a board-certified dermatologist and did not state that his experience extends to the skin condition at issue in this case. Therefore, he has failed to show that the diagnosis and treatment of that condition under these circumstances is within the scope of his experience.

Furthermore, Dr. Grange failed to show that he has knowledge of the accepted standards of medical care for the diagnosis, care, or treatment of the condition involved in the claim under La. R.S. 9:2794(D)(1)(b). Dr. Grange's opinion was based on his diagnosis of the plaintiff's medical condition as irritant contact dermatitis.[5] The medical records show that the plaintiff suffered from a different condition, allergic contact dermatitis, thus Dr. Grange's knowledge as to the appropriate care and treatment of this condition was not established.

Therefore, as we do not find an abuse of the trial court's discretion in excluding expert testimony by Dr. Grange regarding the standard of care in the fields of general surgery or dermatology, we deny the plaintiff's writ.

21-C-13 *Motion for Summary Judgment*

The defendant seeks review of the trial court's denial of his motion for summary judgment. The defendant claims that the plaintiff cannot meet her burden of establishing the prevailing standard of care for surgeons, a deviation from that standard, or resulting damages because the plaintiff has not identified a qualified expert to testify as to the standard of care as Dr. Grange is not qualified to

---

[5] Dr. Koppel testified that irritant contact dermatitis is not an allergic process or immune-based like allergic contact dermatitis, but results from a reaction to a substance, like soap or sanitizer, on the skin.

testify to what a surgeon should or should not have done in the plaintiff's case. The defendant argues that each surgeon who reviewed the case concluded that he did not deviate from the standard of care and Dr. Koppel, the treating dermatologist, testified that the care provided was "timely and appropriate," and, due to allergic reaction, the plaintiff "would require dermatological care regardless of any steps that Dr. Minnard could have taken."

Appellate courts review summary judgments *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *O'Krepki v. O'Krepki*, 16-50 (La. App. 5 Cir. 5/26/16), 193 So.3d 574, 577. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Semco, LLC v. Grand Ltd.*, 16-342 (La. App. 5 Cir. 5/31/17), 221 So.3d 1004, 1031 (*citing Oubre v. Louisiana Citizens Fair Plan*, 11-0097 (La. 12/16/11), 79 So.3d 987, 1002-03).

La. R.S. 9:2794(A) requires a plaintiff asserting a cause of action for medical malpractice to prove by a preponderance of the evidence: (1) the applicable standard of care, (2) a deviation from the standard of care, and (3) that the deviation from the standard of care caused plaintiff's damages. *Garrison v. Tanenbaum*, 02-1181 (La. App. 5 Cir. 4/8/03), 846 So.2d 40, 43. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The mover's burden of proof is to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The adverse party's response, by

affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B).

In establishing the relevant standard of care, expert witnesses are a necessary source of proof in medical malpractice to determine if a defendant failed to exercise reasonable care. *Martin v. East Jefferson General Hospital*, 582 So.2d 1272, 1276 (La. 1991). This expert testimony has been required in Louisiana jurisprudence when "complex medical and factual issues" are involved rather than an "obviously careless act." *Pfiffner v. Correa*, 94-0992 (La. 10/17/94), 643 So.2d 1228, 1233. The standard of care to be determined is related to the appropriate diagnosis and treatment of a rare allergic condition which requires expert testimony. As we previously upheld the decision of the trial court that Dr. Grange cannot provide expert testimony regarding the standard of care in the fields of general surgery or dermatology, we examine the other documents supporting and opposing the motion for summary judgment to see if there is a genuine issue of material fact to be resolved as to the appropriate standard of care and whether the defendant deviated from it. While the trial court found that Dr. Koppel's testimony raised an issue as to a material fact, we disagree.

While Dr. Koppel is a surgeon, his deposition reflects his reluctance at giving the standard of care for a general surgeon prior to beginning surgery when presented with a rash.[6] He only felt comfortable giving the standard of care for dermatological surgery, where he would have the benefit of being the treating physician on a skin condition. As to the standard of care in seeking treatment post-surgery, Dr. Koppel stated "it's really up to the surgeon." He testified that immediately after surgery, the actions taken depend on symptoms and what the

---

[6] Dr. Koppel would not opine on the standard of care to investigate the cause of rash, "I can't answer based on what a surgeon would do, because I'm not a surgeon - - I'm not a general surgeon. I would, in an ideal situation, investigate that particular problem." When asked if a surgeon should operate if a rash is present, he stated "I'm not privy to the standard of care for the surgeon." He testified that he believed there was nothing that the defendant could have done before surgery to lessen the severity of the rash.

area looked like: "If rash got worse, you could start a topical steroid and give benadryl which I think they did." Dr. Koppel's testimony does not support a deviation from the acceptable standard of care for diagnosis or post-surgical treatment of the condition at issue. Dr. Koppel stated the allergic reaction to Hibiclens is extremely rare, and it would be difficult for even a dermatologist to know what is causing a particular rash. He testified "it seemed like their time frame was fairly diligent in terms of how quickly they reacted." Dr. Koppel's expert opinion as to the defendant's response and treatment post-surgery by topical steroid and IV Benadryl was that it was a very acceptable initial treatment. He opined that the discharge summary was consistent with his plan and the plaintiff did improve following it. Consequently, we find that Dr. Koppel's testimony does not raise a genuine issue of material fact that prevents the granting of Dr. Minnard's motion for summary judgment.

After the defendant presented the affidavit of the medical review panel, the report of Dr. Jaffe, and the deposition of Dr. Koppel, showing an absence of support for the element of a deviation from the standard of care, the plaintiff was required to produce factual support sufficient to establish the existence of a genuine issue of material fact. Dr. Grange's testimony was insufficient to create a genuine issue of material fact. Dr. Grange's opinion, even in the limited areas that the trial court may allow him to testify, is based on his incorrect interpretation of the medical record that no action was taken until October 8, 2014 at 6:00 A.M., however, the medical record shows treatment within five hours of the surgery on October 6, 2014 at 6:30 P.M. The Louisiana Supreme Court has recently affirmed the trial court's exclusion of an expert when it found that his opinion relied on assumptions that contradicted witness testimony and was based on insufficient facts and data under La. C.E. art. 702. *Blair v. Coney*, 19-795 (La. 4/3/20), --- So.3d ---, *available at* 2020WL1675992 at *9. An opinion that is based on facts

that are not supported by the record is "inherently unreliable." *Mitchell v. Geno*, 06-243 (La. App. 4 Cir. 10/18/06), 943 So.2d 1235, 1239-40, *writ denied*, 07-92 (La. 3/9/07), 949 So.2d 451.  Since the factual assertions upon which Dr. Grange based his opinions were contradicted by the evidence in the medical record and testimony from Dr. Koppel, the plaintiff failed to present any evidence in support of those assertions. Therefore, there was a lack of expert testimony to meet the burden of showing a deviation from the standard of care.

Therefore, upon *de novo* review, we find that the plaintiff has provided no evidence which establishes a genuine issue of material fact regarding her medical malpractice claim.  Accordingly, the defendant is entitled to summary judgment.

## Conclusion

For the reasons described above, the decision of the trial court limiting the expert testimony of Dr. Grange is affirmed.  Therefore, the plaintiff's writ is denied.  The denial of the defendant's motion for summary judgment is reversed.  Therefore, the defendant's writ is granted and the plaintiff's case is dismissed.

**AFFIRMED IN PART; REVERSED IN PART**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 28, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

# 21-C-13
### C/W 21-C-20

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
WILLIAM R. PENTON, III (RESPONDENT)      BRYAN J. KNIGHT (RELATOR)      MARK E. KAUFMAN (RELATOR)

## MAILED

CHRISTIAN P. SILVA (RESPONDENT)
ATTORNEY AT LAW
1818 MANHATTAN BOULEVARD
SUITE 2
HARVEY, LA 70058